*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 09a0378p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

CLARENCE CARTER,

                *Petitioner-Appellant,*

     *v.*

CARL ANDERSON, Warden,

                *Respondent-Appellee.*

No. 08-3372

_____

Appeal from the United States District Court
for the Southern District of Ohio at Cincinnati.
No. 96-00426—Sandra S. Beckwith, District Judge.

Argued: August 5, 2009

Decided and Filed: October 30, 2009

Before: BOGGS, SUHRHEINRICH, and ROGERS, Circuit Judges.

_____

## COUNSEL

**ARGUED:** Joseph E. Wilhelm, FEDERAL PUBLIC DEFENDER'S OFFICE, Cleveland, Ohio, for Appellant. Thomas E. Madden, OFFICE OF THE OHIO ATTORNEY GENERAL, Columbus, Ohio, for Appellee. **ON BRIEF:** Joseph E. Wilhelm, FEDERAL PUBLIC DEFENDER'S OFFICE, Cleveland, Ohio, Linda E. Prucha, OHIO PUBLIC DEFENDER'S OFFICE, Columbus, Ohio, for Appellant. Thomas E. Madden, OFFICE OF THE OHIO ATTORNEY GENERAL, Columbus, Ohio, for Appellee.

_____

## OPINION

_____

      SUHRHEINRICH, Circuit Judge. Death row inmate Clarence Carter appeals a district court order denying his claim for relief under Federal Rule of Civil Procedure 60(b)(6). For the following reasons, we **AFFIRM**.

**I. Background**

Carter is a death row inmate. The facts giving rise to his conviction, sentence, and habeas petition were set forth in this court's previous opinion and are incorporated by reference. *See Carter v. Mitchell*, 443 F.3d 517, 521-24 (6th Cir. 2006). The following facts are germane to Carter's Rule 60(b)(6) motion.

In December 1988, Carter and Johnny Allen were inmates at the Jail Annex to the Hamilton County Courthouse. Carter had been found guilty of aggravated murder on December 9, 1988, and was awaiting sentencing. On December 28, 1988, Carter struck and kicked Allen numerous times over a twenty to twenty-five minute period, necessitating Allen's hospitalization. Several times during the altercation, Carter stopped and walked away before returning. At one point Allen managed to sit up on a bench. Carter returned, knocked him off the bench, and continued to kick and choke him. Twice Carter used a mop to wipe the blood off of his shoes. Allen never threw a punch or provoked Carter. On January 5, 1989, Carter was sentenced to life imprisonment for the prior aggravated murder. On January 11, 1989, Allen died as a result of Carter's assault.

The State of Ohio tried Carter for the aggravated murder of Allen in July of 1989. The prosecutors at the trial for the murder of Allen were Claude Crowe and Charles Gebhardt. Multiple witnesses testified against Carter at the Allen trial, many of whom were inmates who had witnessed the altercation between Carter and Allen. One witness who testified was inmate Calvin Steele. Steele testified that the fight started when Allen was walking down the hall, and Carter "sucker punched" Allen. Steele demonstrated the sucker punch for the jury. Upon impact, Allen fell to his knees, and Carter continued to hit him. Steele testified that Carter then walked into his cell, stabbed himself in the leg with an object, and then walked back towards Allen. He began to stomp on Allen's head with his foot. He left Allen again, and walked around for a bit. During this time Allen tried to get up, but could only manage to sit up briefly before collapsing. Carter returned and continued the attack. Carter at one point choked Allen repeatedly. Steele estimated that the choking lasted for ten to fifteen minutes. Allen never struck or attempted to strike a blow at Carter. Steele estimated that Carter's assault on Allen lasted twenty to twenty-five minutes. At one point Steele asked Carter to stop, and Carter told Steele to "[g]et [his] ass back downstairs."

The jury found Carter guilty of the aggravated murder of Allen with prior calculation and design on July 26, 1989, and Carter admitted at his sentencing hearing that he killed Allen. The court sentenced Carter to death on August 1, 1989.

In 1994, after Carter's trial, one of Carter's attorneys contacted Steele, who was in prison at the time. After some discussion about the case, Carter's counsel provided Steele with a written affidavit to sign ("post-conviction affidavit"). The affidavit stated that Steele did not see who started the fight between Carter and Allen, and that he did not know how it started. The affidavit also declared that because Carter had previously killed a friend of Steele's, Steele had a motive to testify falsely against Carter. Steele signed the affidavit.

The State of Ohio prosecuted Steele for perjury based on the discrepancy between Steele's trial testimony and his post-conviction affidavit. On December 8, 1994, Steele pled guilty to state felony perjury. At his plea colloquy, Steele stated that he testified truthfully at trial. He disavowed his affidavit. The district court sentenced Steele to one year in prison, with the sentence to run consecutively with the sentence already being served.

One day after Steele pled guilty to the state perjury charge, two investigators from the Hamilton County Prosecutor's Office, John Jay and Bill Fletcher, interviewed Steele about his affidavit. This interview was recorded, and a transcript was made from the recording ("interview transcript"). They claimed that the purpose of the interview was to ascertain whether Steele had been coerced into signing his affidavit by Carter's counsel. The interview transcript serves as the basis for Carter's Rule 60(b)(6) motion.

In 1996, Carter filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. His petition included seventy claims of relief. Two of his claims challenged the truthfulness of Steele's testimony at Carter's murder trial. The district court dismissed as meritless all of the claims except the two claims pertaining to Steele's allegedly false testimony, and ordered an evidentiary hearing. Specifically, Carter's nineteenth claim for relief argued that the prosecution used the false testimonies of Steele and Calvin Johnson. Both of these inmates recanted their trial testimonies in post-trial affidavits. The thirty-first claim for relief argued that Carter lacked the requisite mens rea of "prior calculation and design" for his aggravated murder conviction. Carter contended in the latter claim that false testimony about how the fight started led to his aggravated murder conviction. The district

court granted leave for Carter to take the depositions of Crowe and Gebhardt in preparation for the hearing.

The evidentiary hearing was held on November 9, 1998. Carter called Crowe, Gebhardt, Steele, and Johnson to testify; however, both Steele and Johnson did not testify because they invoked their Fifth Amendment privilege against self-incrimination. The post-conviction affidavits signed by Steele and Johnson were presented into evidence, as was evidence related to the state perjury prosecution and guilty plea of Steele. Neither the district court nor Carter had possession of the interview transcript at the hearing. Crowe made a reference to the transcript at the hearing when he stated, "I talked to Mr. Fletcher and Mr. Jay, the investigators who took another statement from Mr. Steele," but neither the district court nor Carter requested more information with regard to this statement. At the hearing, Carter argued that the existence of the post-conviction affidavit signed by Steele demonstrated that Carter deserved a new trial under the nineteenth and thirty-first claims for relief.

The district court denied Carter relief on both claims. The court reasoned, "In light of Mr. Steele's plea of guilty to the charge of perjury related to the affidavit, which constitutes the only evidence *dehors* the record in support of Petitioner's claim that he was convicted on the basis of false testimony from Mr. Steele, the Court concludes that the evidence *dehors* the record does not support the claim." Carter timely appealed to this court.

This court rejected Carter's argument that the district court should have compelled Steele to testify. *Carter*, 443 F.3d at 539 n.11. We held that Steele had a reasonable fear of prosecution based on his state perjury conviction because double jeopardy would not have protected him from a federal perjury prosecution. *Id.* This court affirmed the district court's denial of a writ of habeas corpus. *Id.* at 539. The Supreme Court denied Carter's petition for certiorari. *Carter v. Mitchell*, 549 U.S. 1127 (2007).

On June 14, 2007, Carter filed this Rule 60(b)(6) motion claiming that he was entitled to relief under Federal Rule of Civil Procedure 60(b)(6) because the Warden did not turn over the interview transcript to the court during the evidentiary hearing.

The district court concluded that the Warden's counsel's failure to *sua sponte* turn this information over to the court during the federal civil § 2254 habeas proceeding did not warrant relief under Rule 60(b)(6) because it did not undermine the integrity of that proceeding.  Carter appeals.

## II.  Analysis

Rule 60(b)(6) is a catchall provision that permits a district court to set aside a judgment for "any other reason that justifies relief."  Fed. R. Civ. P. 60(b)(6).  A proper Rule 60(b) motion "attacks, not the substance of the federal court's resolution of a claim on the merits, but some defect in the integrity of the federal habeas proceedings."  *Gonzalez v. Crosby*, 545 U.S. 524, 532 (2005).  A movant that seeks relief under Rule 60(b) must show "extraordinary circumstances justifying the reopening of a final judgment."  *Id.* at 535.  Carter argues that his Rule 60(b)(6) motion should be granted because the extraordinary circumstance of fraud on the federal habeas court has occurred.  A Rule 60(b)(6) motion is an appropriate vehicle to bring forward a claim for fraud on the court, *id.* at 532 n.5; however, Carter's Rule 60(b)(6) motion fails because Carter cannot prove that the Warden committed fraud on the court.

*Demjanjuk* defined fraud on the court as conduct: 1) on the part of an officer of the court; that 2) is directed to the judicial machinery itself; 3) is intentionally false, willfully blind to the truth, or is in reckless disregard for the truth; 4) is a positive averment or a concealment when one is under a duty to disclose; and 5) deceives the court. *Demjanjuk v. Petrovsky*, 10 F.3d 338, 348 (6th Cir. 1993).  Carter has the burden of proving the existence of fraud on the court by clear and convincing evidence.  *Info-Hold, Inc. v. Sound Merch., Inc.*, 538 F.3d 448, 454 (6th Cir. 2008).  Even if this court assumes for the purposes of this analysis that the first, second and fourth elements of fraud on the court are met, Carter's claim still falls short of satisfying the third and fifth elements of fraud on the court.

### A.     Conduct that is intentionally false, willfully blind to the truth, or is in reckless disregard to the truth

Most notably, for three different reasons, Carter has failed to demonstrate by clear and convincing evidence that the third element of fraud on the court has been satisfied.  First, Crowe made a reference to the interview at the evidentiary hearing about Steele's  post-

conviction affidavit. During the hearing, while being questioned by Carter's counsel, Crowe stated, "Yes, and I talked to Mr. Fletcher and Mr. Jay, the investigators who took another statement from Mr. Steele." As the district court noted: "Crowe's specific reference to the interview during his testimony belies any suggestion of an intentional coverup." Carter's counsel could have posed follow-up questions about this statement. Their failure to make further inquiries does not suggest that the Warden acted intentionally, with willful blindness, or recklessly.

Second, Carter did not offer evidence that demonstrates that the failure to produce the transcript amounted to conduct that manifested an intentional disregard for the truth. Carter urges this court to find that Steele recanted his trial testimony during the interview; however, when Steele's statements are taken in context, it is evident that his comments in the interview transcript supported the testimony he gave at the original trial. Throughout the interview with investigators, Steele commented that he did not have a strong memory of the fight because it occurred six years before his interview. He then made the supposed recantation. He said, "I don't really remember, you know, hitting him. I don't really remember," and "The fight was already underway. But I don't think I remember how it began. Or who hit who first." The foregoing statements do not amount to a recantation of Steele's trial testimony. Instead, they show that he did not remember the details of how the fight started on the date of the interview. In any event, Steele extinguished any potential ambiguity created by these statements with his next response. When Jay asked, "But you testified in court that you did. To the best of your recollection, is that testimony is true," Steele answered "Yes." The "truth" was not affronted when the Warden's counsel did not turn over the transcript of the interview to opposing counsel.

Third, the Warden cannot be said to have purposefully disregarded the truth when the statement by Steele would be inadmissible hearsay at a new trial. Carter's counsel conceded that this statement was hearsay, and was inadmissible to prove the truth of the matter asserted. When asked a question about the admissibility of the interview transcript, Carter's counsel answered, "As substantive evidence, certainly not."

**B.     Conduct that is a positive averment or a concealment when one is under a duty to disclose**

Carter has also failed to satisfy the fourth element of fraud on the court by clear and convincing evidence. No evidence exists that demonstrates that the Warden shirked a duty to turn over this information. Carter urges this court to fashion an evidence disclosure rule for habeas proceedings that is similar to or identical to the *Brady* rule used in criminal trials. *Brady v. Maryland*, 373 U.S. 83 (1963). However, *Brady* involves the disclosure of evidence at a criminal trial. *Id.* Habeas corpus is a civil proceeding. *Browder v. Dir., Dep't of Corr. of Ill.*, 434 U.S. 257, 269 (1978). Moreover, even if we were to find a duty to disclose prior to a habeas hearing that mirrored a *Brady* requirement, this new rule would not apply to the transcript in this case because the statements made in the interview are consistent with past statements made by Steele. Carter has failed for these reasons to satisfy the fourth element of fraud on the court.

**C.  Conduct that deceives the court**

Carter has also failed to satisfy, by clear and convincing evidence, the fifth element of fraud on the court, which requires the judge to actually be deceived. The same district judge that dismissed the claims at the evidentiary hearing oversaw the Rule 60(b) hearing. In her opinion, she stated that if the interview transcript had been available at the evidentiary hearing, "it would not have changed the result" because "Steele's transcript lacks an affirmative statement that Steele lied when he testified at Carter's trial." Since the judge has stated that she was not deceived, Carter cannot establish that the failure to disclose the interview transcript satisfied the fifth element of fraud on the court.

In sum, we conclude that the district court properly dismissed this Rule 60(b) claim.

### III. Conclusion

For the foregoing reasons, the judgment of the district court is **AFFIRMED**.