COOK, Circuit Judge.
General Medicine, P.C. (“General”), a Michigan-based medical services provider, appeals the district court’s fraud-on-the-court finding, which set aside a five-year-old $376-million consent judgment between General and Defendant Horizon/CMS Health Care Corporation (“Horizon”). Intervenor HealthSouth Corporation (“HealthSouth”) cross-appeals the district court’s adverse judgment on the timeliness of its motion for relief under Federal Rule of Civil Procedure 60(b), and seeks an order closing the case. For the following reasons, we reverse in part, affirm in part, and reinstate the consent judgment.
I.
This matter began as a contract dispute between General and Horizon in the Eastern District of Michigan. Under the parties’ contract, General provided “medical director” services to certain nursing homes managed by Horizon. Horizon terminated the agreement in 1996 before the end of the contract term, and General sued. HealthSouth acquired Horizon in 1997 during the pendency of this suit, but never became a party. In 1999, the district *67 court stayed and administratively closed the case to facilitate a criminal investigation of the two Horizon facilities. In 2001, while the case remained closed, Health-South sold all of Horizon’s stock to Mea-dowbrook Healthcare Corporation (“Mea-dowbrook”), and Meadowbrook assumed responsibility for defending Horizon in the contract dispute with General. For reasons not germane to this appeal, General believes that the sale of Horizon to Mea-dowbrook constituted a fraudulent conveyance that enabled Healthsouth to shed Horizon’s liabilities while keeping most of its assets.
The district court reopened the case in April 2003 following the conclusion of the criminal investigation. Thereafter Mea-dowbrook replaced Horizon’s defense counsel and began settlement negotiations with General. According to the parties’ representations, Meadowbrook had limited funds (approximately $25 million) with which to settle a number of claims against Horizon, including the case brought by General. General and Horizon entered into a settlement agreement a year later in April 2004 (R. 244, Ex. R (“Settlement Agreement”)), whereby Horizon/Meadow-brook agreed: (1) to enter into a consent judgment with Horizon “in an amount to be determined prior to entry” (id. ¶ 2); (2) to pay General $300,000 (id. ¶ 6(i)); and (3) to transfer to General “any assets or property ... awarded or returned to Horizon or Meadowbrook, as a result of any action brought by [General] against HealthSouth” (id. ¶ 6(h)). In return, General promised not to enforce the anticipated consent judgment against Horizon or Meadow-brook beyond the $300,000 payment specified in paragraph 6(i), but the settlement agreement stipulated that it did “not re-leas[e] Horizon and/or Meadowbrook from liability to [General] arising out of the [l]awsuit or the [c]onsent [j]udgment.” (Id. ¶¶ 4-5.)
Counsel for both General and Horizon presented a $376-million draft consent judgment to the district court on May 3, 2004, and the district court endorsed it. (R. 232.) The consent judgment ordered Horizon to pay General $376 million plus 10% annual interest.[1] Notably, the consent judgment did not reference the parties’ confidential settlement agreement, and thus did not reveal that General sought to recover all but $300,000 of the $376-million judgment from non-party HealthSouth. Shortly after entry of the consent judgment, General (now a judgment-creditor of Horizon) filed a fraudulent conveyance action against HealthSouth in Alabama. HealthSouth eventually learned of the consent judgment in the Michigan action, moved to intervene in that case, and filed a Rule 60 motion to set aside the 2004 consent judgment in October 2008.
The district court received evidence, heard oral argument, and granted Health-South’s motion by Opinion and Order of May 21, 2009. See Gen. Med., P.C. v. Horizon/CMS Health Care Corp., No. 96-72624, 2009 WL 1447346 (E.D.Mich. May 21, 2009) (“May 2009 Order”). The district court denied relief under Rule *68 60(b)(3), finding HealthSouth’s claim untimely, but set aside the consent judgment pursuant to subsection (d)(3), finding that counsel for General and Horizon had committed fraud on the court. Id. at *4-6. Although the district court recognized that “corporations do not generally present their settlement agreements to the court for approval,” id. at *4, the court reasoned that the non-adversarial nature of the consent judgment’s damages assessment deserved heightened scrutiny, id. at *5 (citing Continental Cas. Co. v. Westerfield, 961 F.Supp. 1502, 1505 (D.N.M.1997)), and the court held that counsel defrauded the court by failing to disclose the Horizon-friendly payment terms of the settlement agreement when they presented the consent judgment, id. at *5-6. Citing a Virginia district court case that applied a constructive-fraud theory of fraud on the court, see Spence-Parker v. Md. Ins. Grp., 937 F.Supp. 551, 563 (E.D.Va.1996) (setting aside a consent judgment as collusive), the district court stated that the parties’ non-disclosure “resulted in th[e] court placing its imprimatur on a consent judgment, the primary purpose of which was to ambush a non-party, HealthSouth,” and found that this conduct “impugned” the “integrity of the court and the judicial process.” May 2009 Order at *5. Having set aside the consent judgment, the district court instructed General and Horizon to “consult each other and th[e] court’s case manager to determine what further proceedings are appropriate.” Id. at *6.
After the May 2009 Order, Horizon moved for clarification and instruction, General moved to enforce the settlement agreement via entry of a new consent judgment, and HealthSouth moved to dismiss on the grounds that Horizon had satisfied its obligations under the settlement agreement by paying General $300,000. By Opinion and Order of February 25, 2010, the district court held that the settlement agreement between General and Horizon remained in effect, but resolved that the settlement agreement’s severance clause precluded entry of another consent judgment. Applying the remaining terms of the settlement agreement, the district court concluded that Horizon’s payment of $300,000 to General satisfied its obligations under the settlement agreement, and thus “no further action is required.” Gen. Med., P.C. v. Horizon/CMS Healthcare Corp., No. 96-72624, 2010 WL 726963, at *1-2 (E.D.Mich. Feb.25, 2010) (“February 2010 Order”).
General appealed both the May 2009 and February 2010 Orders on March 9, 2010, and HealthSouth cross-appealed. The parties report that the Alabama courts have stayed the fraudulent conveyance action pending the outcome of these proceedings.
II.
As a threshold matter, HealthSouth renews its challenge to the timeliness of General’s appeal under Federal Rule of Appellate Procedure 4(a)(1)(A). The Rule’s 30-day limit for filing appeals in civil cases “is mandatory and jurisdictional.” Intera Corp. v. Henderson, 428 F.3d 605, 611 (6th Cir.2005) (internal quotations marks and citation omitted). As before, HealthSouth argues that the May 2009 Order constituted a final judgment for purposes of appeal, and thus reasons that this court has no jurisdiction to review General’s appeal filed nine months later, after the issuance of the February 2010 Order. A motions panel of this court previously denied HealthSouth’s motion to dismiss, finding that “the appealability of the May 2009 order is inextricably intertwined with the overall validity of the orders challenged on appeal, resolution of [which] ... requires a merits determination.” (Order *69 of July 9, 2010.) Having reviewed the May 2009 and February 2010 Orders and related proceedings, we find that General properly and timely appealed the February 2010 Order.
Under 28 U.S.C. § 1291, federal appeals courts have jurisdiction “of appeals from all final decisions of the district courts of the United States.” A final, appealable decision “ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.” Coopers & Lybrand v. Livesay, 437 U.S. 463, 467, 98 S.Ct. 2454, 57 L.Ed.2d 351 (1978) (quoting Catlin v. United States, 324 U.S. 229, 233, 65 S.Ct. 631, 89 L.Ed. 911 (1945)); see also In re Saffady, 524 F.3d 799, 802 (6th Cir.2008). Here, the May 2009 Order did not end the litigation leaving nothing but execution, as required for a final judgment. Rather, it expressly left the door open for further proceedings on the issue it decided, instructing the parties to consult with the case manager to determine how to proceed after the vacatur of the consent judgment. Indicative of the matter’s unresolved status, all three parties, including intervenor HealthSouth, filed responsive motions to the May 2009 Order. The district court’s February 2010 Order viewed these motions as consistent with the instructions of the May 2009 Order and granted clarification, explaining that the prior order left the settlement agreement intact, and that the settlement agreement’s terms precluded the entry of a new consent judgment. February 2010 Order at *1-2.
Nevertheless, HealthSouth argues the finality of the May 2009 Order because the underlying judgment — the consent judgment it vacated — constituted a final judgment. For support, HealthSouth relies on this court’s decision in Mallory v. Eyrich, which deemed final and appealable a Rule 60(b) order setting aside a Rule 68 judgment. 922 F.2d 1273, 1277 (6th Cir.1991); see also Browder v. Dir., Dep’t of Corr. of Ill., 434 U.S. 257, 263 n. 7, 98 S.Ct. 556, 54 L.Ed.2d 521 (1978) (suggesting that parties may timely appeal a Rule 60(b) order under Federal Rule of Appellate Procedure 4(a)). But Mallory does not speak to the type of order issued in this case — a fraud-on-the-court judgment issued under the court’s inherent powers — and it does not stand for the proposition that any Rule 60 order starts the limitations period for filing an appeal, regardless of whether that order satisfies the Coopers finality standard. Indeed, Mallory purported to apply the Coopers finality standard, 922 F.2d at 1276-77, and on other occasions we have rejected claims that Rule 60 orders constitute final judgments, e.g., In re Saffady, 524 F.3d at 802; Fuller v. Quire, 916 F.2d 358, 360 (6th Cir.1990). Cf. 12 James W. Moore et al., Moore’s Federal Practice § 60.68[2] (3d ed.2011) (explaining that a grant of Rule 60 relief “is rarely [an] ap-pealable order,” but noting that appeal will lie if the court “enters a corrected judgment so that there is nothing further to be decided by the district court”).
Regardless of the finality of the 2004 consent judgment, the May 2009 Order lacked finality because it did not address its own impact on the parties’ settlement agreement — an agreement that expressly required the entry of a consent judgment between General and Horizon. Accordingly, the district court asked the parties to consult on further proceedings, the parties filed responsive motions, and the district court ruled on these unresolved issues in a clarification order. Under the circumstances, General properly appealed the February 2010 Order, and this court may review it.
III.

A. Standard of Review

We generally review district court rulings on Rule 60 motions for post-judgment *70 relief for abuse of discretion. E.g., Jones v. Ill. Cent. R.R. Co., 617 F.3d 843, 850 (6th Cir.2010); United States v. Pauley, 321 F.3d 578, 581 (6th Cir.2003). General contends that we should review the district court’s fraud-on-the-court ruling de novo because the district court exercised its inherent powers under Rule 60’s “savings clause,” section (d), instead of the post-judgment remedies identified in section (b). For support, General cites the Third Circuit’s decision in Hemng v. United States, which reviewed de novo a district court’s 12(b)(6) dismissal of an independent fraud-on-the-court action instituted under Rule 60’s savings clause. See 424 F.3d 384, 389-90 (3d Cir.2005). But Herring conflicts with this Circuit’s only panel decision reviewing a fraud-on-the-court ruling under Rule 60(d)(3), as well as this Circuit’s cases reviewing other decisions rendered under the Rule’s savings clause, all of which apply the abuse-of-discretion standard. Maloof v. Level Propane, Inc., 429 Fed.Appx. 462, 467 (6th Cir.2011) (fraud-on-the-court finding under Rule 60(d)(3)); Mitchell v. Rees, 651 F.3d 593, 595 (6th Cir.2011) (independent action under Rule 60(d)(1)); Barrett v. Sec’y of Health & Human Servs., 840 F.2d 1259, 1263 (6th Cir.1987) (independent action under Rule’s prior savings clause in section (b)).
The procedural posture of this case and our Circuit’s cases reviewing other forms of post-judgment relief persuade us to follow Maloof and apply the abuse-of-discretion standard. Unlike Hemng, which considered a district court’s 12(b)(6) dismissal of an independent action, the instant case concerns an intervening party’s post-judgment motion to set aside a four-year-old consent judgment, which the district court decided after receiving evidence and hearing argument. Sixth Circuit law permits the district court to treat such motions, procedurally, as either an independent action or a post-judgment motion, so long as the classification does not prejudice the adverse party. Mitchell, 651 F.3d at 595 (citing Bankers Mortg. Co. v. United States, 423 F.2d 73, 81 n. 7 (5th Cir.1970); 11 Wright, Miller & Kane, Federal Practice & Procedure § 2868 n. 30, at 405 (1995)). We find the district court’s treatment of HealthSouth’s filing as a post-judgment motion appropriate under the circumstances.
We also find instructive that this Circuit reviews sanctions rulings deriving from district courts’ “inherent powers” under the abuse-of-discretion standard. E.g., Metz v. Unizan Bank, 655 F.3d 485, 489 (6th Cir.2011); BDT Prods., Inc. v. Lexmark Int’l, Inc., 602 F.3d 742, 751 (6th Cir.2010). Because Rule 60’s savings clause refers to a court’s existing powers, the “inherent powers” cases seem particularly apt. See Fed.R.Civ.P. 60(d) (“This rule does not limit a court’s power to ... (3) set aside- a judgment for fraud on the court.”); see also Mitchell, 651 F.3d at 595 (noting that the savings clause speaks to district courts’ longstanding ability to hear independent equitable actions challenging a judgment).
Applying the abuse-of-discretion standard, we will reverse only if the court “ ‘commits a clear error of judgment, such as applying the incorrect legal standard, misapplying the correct legal standard, or relying upon clearly erroneous findings of fact.’ ” Jones, 617 F.3d at 850 (quoting In re Ferro Corp. Derivative Litig., 511 F.3d 611, 623 (6th Cir.2008)). Post-judgment relief “is circumscribed by public policy favoring finality of judgments and termination of litigation.” See Blue Diamond Coal Co. v. Trs. of UMWA Combined Benefit Fund, 249 F.3d 519, 524 (6th Cir.2001); see also Superior Seafoods, Inc. v. Tyson Foods, Inc., 620 F.3d 873, 878 (8th Cir.2010) (distinguishing fraud on the court *71 under the savings clause from Rule 60(b) motions and other fraud claims, noting that “[r]elief through an independent equitable action alleging fraud on the court, then, is a truly extraordinary form of relief’); Moore’s Federal Practice § 60.21[4][c] (emphasizing narrow reach of fraud-on-the-court doctrine under Rule 60(d)(3), cautioning that broad application would render meaningless the remedies and time limitations prescribed by Rule 60(b)).

B. Fraud on the Court

Fraud on the court refers to “the most egregious conduct involving a corruption of the judicial process itself.” 11 Charles Alan Wright et al., Federal Practice & Procedure § 2870 (West 2011) (collecting cases). Treatises speak of such flagrant abuses as bribing a judge, employing counsel to exert improper influence on the court, and jury tampering. Id. § 2870; Moore’s Federal Practice § 60.21[4][a]. Although not doctrinally limited to such criminal acts, courts recognize the extraordinary nature of the remedy and cautioned against expansive use of the doctrine. In Demjanjuk v. Petrovsky, we observed that
[f]raud upon the court should ... embrace only that species of fraud which does or attempts to, subvert the integrity of the court itself, or is a fraud perpetrated by officers of the court so that the judicial machinery cannot perform in the usual manner its impartial task of adjudging cases that are presented for adjudication, and relief should be denied in the absence of such conduct.
10 F.3d 338, 352-53 (6th Cir.1993) (quoting Moore’s Federal Practice § 60.33, omission in Demjanjuk) (setting aside an extradition order for fraud on the court because government attorneys failed to disclose exculpatory evidence in violation of the duty recognized in Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963)). Accordingly, cases require a party seeking to show fraud on the court to present clear and convincing evidence of the following elements: “1) [conduct] on the part of an officer of the court; that 2) is directed to the judicial machinery itself; 3) is intentionally false, willfully blind to the truth, or is in reckless disregard of the truth; 4) is a positive averment or a concealment when one is under a duty to disclose; and 5) deceives the court.” Johnson v. Bell, 605 F.3d 333, 339 (6th Cir.2010); (quoting Carter v. Anderson, 585 F.3d 1007, 1011-12 (6th Cir.2009)). “In practice, this means that even fairly despicable conduct will not qualify as fraud on the court.” Moore’s Federal Practice § 60.21[4][e] (collecting cases for the proposition that perjury and non-disclosure by a single litigant did not rise to the level of fraud on the court).
The district court in this case cited Demjanjuk and the above factors, without detailing findings to support them, focusing instead on the non-adversarial nature of the consent judgment and counsel’s nondisclosure of the terms of the settlement agreement as “distorting] ... the judicial process.” May 2009 Order at *5-6. Because the district court misapplied the above standard and HealthSouth has not shown the requisite clear and convincing evidence of the third and fourth factors for fraud on the court — scienter and violation of a duty to disclose — we determine that the district court abused its discretion and reverse.

1. Scienter

With regard to the scienter element, the district court conspicuously failed to find the attorneys’ conduct intentionally false, wilfully blind to the truth, or in reckless disregard for the truth. Instead, the court cited with approval a Virginia case finding post-judgment relief available to cancel a *72 collusive consent judgment, despite the absence of deceitful intent. Id. at *5 (quoting Spence-Parker, 937 F.Supp. at 563). At oral argument, HealthSouth conceded the absence of circuit precedent recognizing the constructive-fraud doctrine applied in Spence-Parker. Rather, under our fraud-on-the-court precedents, the alleged misconduct must demonstrate, at a minimum, a reckless disregard for the truth. See, e.g., Carter, 585 F.3d at 1011-12; Demjanjuk, 10 F.3d at 348-49. Demjanjuk defined reckless disregard in this context as referring to situations where “the actor has ... knowledge, or reason to know, of the facts, but does not realize or appreciate the high degree of risk involved, although a reasonable man in his position would do so.” 10 F.3d at 349 (omission in Demjanjuk) (quoting Restatement (Second) of Torts § 500, cmt. (a)). Viewed through the lens of this objective standard, the record lacks support for conclusion that counsel for General and Horizon acted in reckless disregard for the truth.
Counsel for General and Horizon both appeared in person and jointly presented the district judge with a proposed consent judgment. Though the confidential settlement agreement went undiscussed, counsel brought a copy of it to chambers in case the judge asked to see it. Such behavior belies HealthSouth’s claim that counsel intended to deceive the court; if they had such ill intentions, why appear in person and bring the settlement agreement with them?
Notwithstanding this reasonable conduct, HealthSouth contends that the consent judgment’s damages figure affirmatively misstates the true damages set forth in the parties’ separate settlement agreement. The district court’s fraud-on-the-court judgment did not adopt this view, and the record does not support such a finding. The draft order presented to the district court — the consent judgment— does not speak of the parties’ settlement agreement or its terms. HealthSouth makes much of the consent judgment’s language stating that the district court “[had been] fully advised in the premises,” but this boilerplate language does not suggest that counsel attempted to dupe the district court.
The settlement agreement, meanwhile, does not purport to establish Horizon’s liability for General’s contract claims; it sets forth only General’s plans for collecting the consent judgment from Horizon. Thus, while the settlement agreement includes Horizon’s promises to pay only $300,000 and funds returned from Health-South (Settlement Agreement ¶ 6(i), (ii))— in effect, General’s covenant of limited enforcement — the settlement agreement in no way undermines the damages amount set forth in the consent judgment. Indeed, the settlement agreement, by its own terms, maintained Horizon’s or Meadow-brook’s liability under the consent judgment. (Id. ¶ 5.)[2]
HealthSouth also failed to show anything inherently dishonest about the consent judgment’s damages figure. While HealthSouth challenges the methodology employed by General’s damages expert and the total amount of damages, the district court’s fraud-on-the-court ruling included no findings regarding the accuracy or reasonableness of the damages, and HealthSouth has not suggested that improper motives affected General’s damages *73 expert’s estimate. Ultimately, neither the consent judgment’s damages figure nor the settlement agreement’s covenants of limited enforcement bespeak the reckless disregard for truth necessary for fraud on the court.

2. Duty to Disclose

In addition to the absence of scienter, the district court failed to identify a duty of disclosure violated by counsel. Spence-Parker, the only authority cited by the district court for the existence of a duty to disclose, purported to apply a doctrine of “constructive fraud” under Virginia’s Rules of Professional Responsibility. See 937 F.Supp. at 562 (noting that EC 7-17, Va. Code Profl Resp. required “competent, adverse presentation of evidence and issues”). As noted above, HealthSouth concedes that this standard does not govern the present appeal. HealthSouth makes passing reference to Sixth Circuit cases acknowledging counsel’s duty of candor, but General correctly points out that these cases concerned affirmative misrepresentations to the court and do not address counsel’s obligations in presenting a consent judgment to the court. See Holloway v. Brush, 220 F.3d 767, 780 (6th Cir.2000) (en banc) (criticizing a state agency for reneging on its earlier statement to the court that it would renew child custody proceedings); Thompson v. Paasche, 950 F.2d 306, 315 n. 7 (6th Cir.1991) (recognizing that lawyers’ general duty of candor forbids “misrepresenting] the law when it clearly goes against the client”); Cunningham v. Sears, Roebuck & Co., 854 F.2d 914, 916 (6th Cir.1988) (reporting attorney for disciplinary investigation where attorney violated Circuit rules by concealing and misrepresenting material facts, namely his client’s knowledge of a witness-juror association and the district court’s bench ruling on the post-trial motion).
Given the opportunity to supplement the district court’s reasoning, HealthSouth presents no authority — under the Federal Rules of Civil Procedure, the Michigan Rules of Professional Conduct, or this Circuit’s case law — for the proposition that counsel must disclose the terms of a confidential settlement agreement prior to seeking entry of a consent judgment. We note that the Michigan Rules’ general duty of candor does not require such disclosure,[3] and Michigan courts have even per *74 mitted parties to insurance disputes to enter side agreements without impairing their consent judgments. See, e.g., Alyas v. Gillard, 180 Mich.App. 154, 446 N.W.2d 610, 613-14 (989) (explaining that a covenant to collect only from insurance proceeds did not release the insured from liability under the consent judgment, and thus did not relieve the insurance company from liability to the insured); Action Auto Stores, Inc. v. United Capitol Ins. Co., 845 F.Supp. 417, 420-21 (W.D.Mich.1993) (same).
As the district court itself recognized, “corporations do not generally present their settlement agreements to the court for approval.” May 2009 Order at *4. Neither the district court nor HealthSouth on appeal have identified a specific duty of candor violated by counsel’s non-disclosure, further underscoring that counsel did not act recklessly, as contemplated by the objective Demjanjuk standard.
HealthSouth faults General’s counsel for concealing and misrepresenting the consent judgment and settlement agreement to the Alabama courts in the fraudulent conveyance action. Assuming the truth of these allegations, this post-settlement conduct in Alabama court cannot demonstrate that counsel defrauded the Michigan district court that entered the consent judgment. Though we do not endorse the litigation tactics allegedly employed by General’s counsel in the Alabama proceedings, that conduct has no bearing on whether counsel defrauded the Michigan court with their presentation of the consent judgment.
The district court’s concern that General employed “ambush” tactics against Health-South overstates the case. The consent judgment did nothing more than establish Horizon’s liability to General, which under Alabama law enabled General to sue HealthSouth for assets fraudulently transferred from Horizon. See Ala.Code § 8-9A-7(b); Ex parte HealthSouth Corp., 974 So.2d 288, 293-98 (Ala.2007). Stipulated orders generally do not have preclusive effect on third parties, see, e.g., In re Kane, 254 F.3d 325, 329-30 (1st Cir.2001) (collecting authority); Benoay v. Decker, 517 F.Supp. 490, 496 (E.D.Mich.1981), aff'd 735 F.2d 1363 (6th Cir.1984) (unpublished table decision), and the consent judgment’s damages figure does not establish the merits of General’s separate fraudulent conveyance action against HealthSouth, see Ala.Code §§ 8-9A-4-5 (setting forth the substantive requirements for a fraudulent conveyance action); Thompson Props. 119 AA 370, Ltd. v. Birmingham Hide & Tallow Co., 897 So.2d 248, 262-63 (Ala.2004). Cf. Ala.Code § 8-9A-7(a)(l) (authorizing creditor remedy of “[a] void anee of the transfer to the extent necessary to satisfy the creditor’s claim” (emphasis added)).
To the extent that the consent judgment’s damages figure bears on the merits of the Alabama fraudulent conveyance action, the Alabama courts will evaluate the circumstances leading to the entry of the consent judgment in determining whether to credit the damages figure. Continental Casualty, the New Mexico decision cited by the district court, did exactly that. As a non-issuing court asked to enforce a consent judgment, it *75 considered the circumstances leading to the entry of the consent judgment, deemed them collusive, and declined to give the consent judgment preclusive effect. Cont’l Cas., 961 F.Supp. at 1509. HealthSouth will suffer no unfair prejudice from reinstatement of the consent judgment because it retains the ability to challenge the damages figure in defending the Alabama fraudulent conveyance action. Cf. Mitchell, 651 F.3d at 595 (listing inability to present a defense as an “indisputable element[]” of an independent action to set aside a judgment under Rule 60(d)(1)).

C. Contingent Cross-Appeal: Timeliness of Relief Under Rule 60(b)

As a fail-back position, HealthSouth cross-appeals the district court’s denial of relief under Rule 60(b)(3). HealthSouth does not contest the district court’s conclusion that the (b)(3) limitations period had expired, but instead asserts that it presented a separate collusion claim subject to the more lenient limitations period applicable to Rule 60’s “catchall provision,” subsection (b)(6). See Fed.R.Civ.P. 60(b)(3) (authorizing post-judgment relief for fraud, misrepresentation, or misconduct by an adversary), (b)(6) (permitting remedy for “any other reason that justifies relief’), (c)(1) (providing one-year limitations period for (b)(3) claims and a “reasonable time” limitations period for (b)(6) claims). HealthSouth argues that its claim qualifies under (b)(6) because subsection (b)(3) does not expressly apply to claims of collusion.
We question how the allegations underpinning HealthSouth’s purported collusion claim differ from those underlying its fraud-on-the-court claim. HealthSouth itself repeatedly characterizes the actions of General’s and Horizon’s counsel in subsection (b)(3) terms: fraud, misrepresentation, and misconduct. (See HealthSouth Br. at 2 (referring to the parties’ “egregious fraud”), 33 (“misrepresentations”), 39-54 (describing opposing counsel’s failure to disclose as misconduct).) We “adhere[ ] to the view that courts should apply Rule 60(b)(6) only in exceptional or extraordinary circumstances which are not addressed by the first five numbered clauses of the Rule.” Hopper v. Euclid Manor Nursing Home, Inc., 867 F.2d 291, 294 (6th Cir.1989); see also East Brooks Books, Inc. v. City of Memphis, 633 F.3d 459, 465 (6th Cir.2011). In short, a party cannot escape the time limitations applicable to certain Rule 60 provisions by dressing its claim in subsection (b)(6) clothes. See Hopper, 867 F.2d at 294 (“[District courts may employ subsection (b)(6) as a means to achieve substantial justice when ‘something more’ than one of the grounds contained in Rule 60(b)’s first five clauses is present.”); Lyle v. Brazil, 168 F.3d 490 (6th Cir.1998) (unpublished table decision) (citing Ackermann v. United States, 340 U.S. 193, 198, 71 S.Ct. 209, 95 L.Ed. 207 (1950)). Accepting HealthSouth’s own characterization of the alleged misconduct, its claim fits under the auspices of subsection (b)(3), and HealthSouth has not shown extraordinary circumstances qualifying its claim for (b)(6) treatment. We therefore agree with the district court that Health-South cannot bypass subsection (b)(3)’s one-year limitations period under the guise of a(b)(6) claim.
In any event, HealthSouth has not shown that it filed its motion within a “reasonable time,” as required for a 60(b)(6) claim. See Fed.R.Civ.P. 60(c)(1). HealthSouth filed its Rule 60 motion in the Michigan proceedings in October 2008, more than four years after entry of the consent judgment. HealthSouth blames General for the delay, claiming that General actively concealed the terms of the consent judgment and settlement agreement *76 in the Alabama proceedings. But the record reflects that General notified Health-South of the consent judgment in its November 2004 interrogatory responses for the Alabama proceedings (R. 236, Ex. 16 at 2-4), and HealthSouth does not dispute that it had access to the settlement agreement in January 2006 when it filed a motion for summary judgment in the Alabama proceedings (see HealthSouth Br. at 51 (asserting that General concealed the settlement agreement for a year after instituting the Alabama proceedings); General Reply Br. at 48). HealthSouth offers no explanation why, given such notice of General’s and Horizon’s agreement, it waited nearly two years to file its Rule 60 motion in the Michigan proceedings. Though courts permit longer delays in other cases, the reasonableness of the delay “depends on the facts of a given case including the length and circumstances of the delay, the prejudice to the opposing party by reason of the delay, and the circumstances compelling equitable relief.” See Olle v. Henry & Wright Corp., 910 F.2d 357, 365 (6th Cir.1990) (citing cases deeming two-year delay reasonable). Assessing these factors, HealthSouth filed too late. See Blachy v. Butcher, 129 Fed.Appx. 173, 179 (6th Cir.2005) (finding that a three-year delay did not satisfy the Rule’s “reasonable time” limitation); Sutles v. City of Chattanooga, Tenn., 886 F.2d 1316 (6th Cir.1989) (unpublished table decision) (same, two-and-a-half-year delay).
IV.
For the foregoing reasons, we REVERSE the district court’s fraud-on-the-court judgment, AFFIRM the Rule 60(b) judgment, and REINSTATE the May 3, 2004 consent judgment.

. The consent judgment states in pertinent part:
This matter having come before the Court on Plaintiff’s Complaint for breach of contract, and the parties through their respective attorneys, having stipulated to the entry of this Judgment, and the Court being more fully advised in the premises:
NOW, THEREFORE, IT IS HEREBY ORDERED AND ADJUDGED that Defendant [HORIZON] shall pay to Plaintiff [GENERAL] the sum of [$376 million], plus interest on the judgment from the date of entry until paid at the rate of [10%] per annum.

. We note that this non-release provision prompted the Alabama Supreme Court, applying Michigan law to the fraudulent conveyance proceedings now-stayed, to conclude that General’s covenants of limited collection did not operate as a release of liability. Ex parte HealthSouth Corp., 974 So.2d 288, 296 (Ala.2007).

. As of the time of the entry of the consent judgment, the applicable Michigan Rule provided in pertinent part:
Rule: 3.3 Candor Toward the Tribunal
(a) A lawyer shall not knowingly:
(1) make a false statement of material fact or law to a tribunal;
(2) fail to disclose a material fact to a tribunal when disclosure is necessary to avoid assisting a criminal or fraudulent act by the client;
(3) fail to disclose to a tribunal controlling legal authority in the jurisdiction known to the lawyer to be directly adverse to the position of the client and not disclosed by opposing counsel; or
(4) offer evidence that the lawyer knows to be false.
If a lawyer has offered material evidence and comes to know of its falsity, the lawyer shall take reasonable remedial measures.
Mich. R. Prof! Conduct 3.3 (2004). Later amendments reorganized and modified the rule to preclude attorneys from, inter alia, knowingly
(a)(1) makpng] a false statement of material fact or law to a tribunal or failpng] to correct a false statement of material fact or law previously made to the tribunal by the lawyer;
(2) failpng] to disclose to a tribunal controlling legal authority in the jurisdiction known to the lawyer to be directly adverse to the position of the client and not disclosed by opposing counsel; or
(3) offerpng] evidence that the lawyer knows to be false. If a lawyer has offered material evidence and comes to know of its falsity, the lawyer shall take reason *74 able remedial measures, including, if necessary, disclosure to the tribunal^]
(b) If a lawyer knows that the lawyer's client or other person intends to engage, is engaging, or has engaged in criminal or fraudulent conduct related to an adjudicative proceeding involving the client, the lawyer shall take reasonable remedial measures, including, if necessary, disclosure to the tribunal.
Mich. R. Prof’l Conduct 3.3 (2011). None of these restrictions address the non-disclosure at issue in this appeal.