In the

# United States Court of Appeals
## for the Seventh Circuit

No. 22-2838

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

ATORIS JAQUEZ SLATER,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Central District of Illinois.
No. 4:20-cr-40053 — **Sara Darrow**, *Chief Judge.*

ARGUED NOVEMBER 1, 2023 — DECIDED MARCH 5, 2026

Before SYKES, ST. EVE, and LEE, *Circuit Judges.*

SYKES, *Circuit Judge.* In July 2020 police officers in Rock Island, Illinois, initiated a traffic stop of an unregistered minivan, but the driver, Atoris Slater, ignored their lights and fled. In the high-speed chase that followed, Slater nearly collided with a truck, so the officers ended their pursuit. With the police no longer on his tail, Slater pulled into a parking lot, abandoned the minivan, and hid in an empty dumpster nearby.

His escape was short-lived. The police soon located the minivan and, with it, Slater's hiding spot. They searched the van and found a loaded handgun, a bag of marijuana, and dozens of cannabis edibles. The officers arrested Slater and transported him to jail. When they arrived, he tried to discard something in a trash can. It was a bag of crack cocaine.

A grand jury returned a three-count indictment charging Slater with possessing controlled substances with intent to distribute, possessing a firearm as a felon, and possessing a firearm in furtherance of a drug-trafficking crime. Slater pleaded guilty to all three charges, though without a plea agreement. The parties agreed, however, that his plea to the drug-trafficking charge hinged on his possession of crack cocaine, not cannabis or any of its derivatives.

The presentence report ("PSR") accounted for the other drugs as relevant conduct. Because Slater possessed more than one type of controlled substance, the probation officer used the drug-conversion ratios in § 2D1.1 of the Sentencing Guidelines to calculate the converted drug weights for purposes of the advisory sentencing range. For the marijuana and edibles, the PSR used the 1:1 ratio that applies to marijuana and cannabis. U.S.S.G. § 2D1.1 app. n.8(D) (2021). The government did not object. *See* FED. R. CRIM. P. 32(f)(1) (requiring objections to a PSR within 14 days of receipt of the report).

The day before sentencing, however, the prosecutor learned that some of the edibles constituted THC mixtures—at least based on preliminary field testing—and thus were subject to § 2D1.1's much higher 1:167 ratio. § 2D1.1 app. n.8(D). Using the higher ratio added about three years to the

sentencing range on the first two counts. (Count three required a consecutive 60-month sentence.) At sentencing the prosecutor raised a late objection to the presentence report and requested a continuance for lab tests. Slater objected, but the district judge granted the motion, citing her duty to correctly calculate the Guidelines range.

Lab testing confirmed that the edibles contained THC, so the revised PSR recommended application of the 1:167 ratio. The parties agreed and the judge adopted the new higher sentencing range. In the end, the judge sentenced Slater to a below-Guidelines term of 60 months on the first two counts and the mandatory 60-month consecutive term on the third.

On appeal Slater contests the judge's decision to entertain the prosecutor's belated objection to the PSR. In the alternative, he argues for the first time that the 1:167 ratio does not apply to the edibles. Neither argument persuades. A district judge may consider an untimely objection to a PSR for good cause. *See* FED. R. CRIM. P. 32(i)(1)(D). The judge was within her discretion to permit the late objection here. And Slater affirmatively agreed to the higher ratio when lab tests confirmed the presence of THC. That's a waiver of his current claim to the contrary. Even if he merely forfeited the argument, he has not shown that reversal is warranted on plain-error review. We affirm.

## I. Background

On July 30, 2020, police officers on patrol in Rock Island spotted a minivan that was not properly registered. As they activated their emergency lights to initiate a traffic stop, they recognized Slater as the driver.

Rather than pull over, however, Slater accelerated and sped away. The officers pursued him, at least initially. Slater

led them on a chase at speeds approaching 70 miles per hour, more than twice the posted limit. When Slater nearly hit a semitruck traveling in an adjacent lane, the officers gave up the pursuit.

Moments later, however, the dispatcher radioed a report from a pedestrian who had just narrowly missed being struck by a speeding minivan. With the benefit of this additional information, the officers located Slater's minivan—now unoccupied—in a parking lot. Inspecting it through the windows, they noticed a bag of marijuana in plain view on the center console. Other officers searched the area and found Slater hiding in an empty dumpster.

The officers then searched the minivan. In addition to the bag of marijuana, they found a vehicle title and bill of sale for the minivan, both in Slater's name, and a loaded revolver with an obliterated serial number. They also found a bag of cannabis edibles, including "Sweed 'n Loud" cereal bars and various kinds of gummies.

The officers arrested Slater and transported him to the Rock County Jail. While en route, the squad car's camera captured Slater trying to stuff something into the back of his pants. When they arrived at the jail, an officer saw Slater toss something into a nearby trash can. The officer immediately retrieved the discarded object—a clear plastic bag containing multiple smaller baggies of crack cocaine.

A grand jury in the Central District of Illinois indicted Slater for (1) possession of crack cocaine, THC, and marijuana with intent to distribute, 21 U.S.C. § 841(a)(1); (2) possession of a firearm as a felon, 18 U.S.C. § 922(g)(1); and (3) possession of a firearm in furtherance of a drug-trafficking crime, *id.* § 924(c)(1)(A). After several

continuances at Slater's request, the parties worked toward a plea agreement. Drug quantity was an issue in the negotiations, and a delay in the lab tests for the edibles slowed progress.

Slater eventually pleaded guilty to all counts without a plea agreement. The parties agreed, however, that his guilty plea to the drug-trafficking charge related only to the crack cocaine; lab tests for the other drugs remained unavailable. The judge accepted Slater's guilty pleas, ordered a PSR, and set a sentencing date four months later.

Key to this case is the treatment of the cannabis edibles under the Sentencing Guidelines. In the initial PSR, the probation officer noted that both the marijuana and the edibles, which weighed a combined total of 1,730 grams (17 grams of marijuana and 1,713 grams of edibles), had tested positive in the field for the presence of cannabis. And because Slater had possessed crack cocaine in addition to cannabis, the probation officer calculated a combined drug weight using the drug-conversion ratios set forth in the commentary to § 2D1.1 of the Guidelines.[1]

The probation officer multiplied the weight of the crack cocaine, 14.1 grams, by the corresponding 1:3571 drug-conversion ratio, resulting in a converted drug weight of 50.35 kilograms. For the marijuana and cannabis, the probation officer used the applicable 1:1 ratio, which added 1.73 kilograms to the total. The combined converted drug weight was 52.08 kilograms, which translated to an advisory

---

[1] To account for the fact that some controlled substances are more dangerous than others, these ratios multiply a substance's actual weight by a factor that loosely represents its harm and potency.

sentencing range of 30 to 37 months in prison for counts one and two. Count three carried a mandatory consecutive term of not less than 60 months. *See* § 924(c)(1)(A)(i).

Slater objected to the PSR on several grounds, but only one is relevant here. He argued that because neither the marijuana nor the edibles had been lab-tested, he couldn't be held accountable for them. He acknowledged, however, that the crack cocaine alone supported the sentencing range. The government asserted that the probation officer had correctly calculated the drug weight and raised no objections of its own.

That changed on the scheduled sentencing date. At the beginning of the sentencing hearing, the prosecutor informed the court that he had learned the day before that the edibles had tested positive in the field for the presence of THC, not cannabis, as everyone had assumed. That development changed the government's position on the applicable drug-conversion ratio. Using the higher 1:167 ratio applicable to THC, *see* § 2D1.1 app. n.8(D), the converted drug weight for the edibles would have been higher, which in turn would increase the sentencing range on counts one and two by several years. The prosecutor accordingly moved for a continuance to allow for lab testing of the edibles and a corrected PSR.

Slater objected, noting that the 14-day period for objecting to the PSR had long since expired. *See* FED. R. CRIM. P. 32(f)(1). The judge acknowledged Slater's "psychological preparation" for sentencing but emphasized her "duty" to correctly calculate the Guidelines range. That duty, she explained, required that she ascertain the merit of the gov-

ernment's tardy objection. She granted the motion and postponed sentencing.

A week later the prosecutor filed a written objection to the PSR. In response Slater reiterated that the government's objection was untimely and added that the prosecutor had induced his guilty plea by agreeing that the drug-trafficking count rested only on his crack-cocaine possession. In reply the prosecutor repeated the judge's emphasis on the court's duty to calculate the correct Guidelines range. That requirement, the government argued, established "good cause" to permit the belated objection to the PSR. FED. R. CRIM. P. 32(i)(1)(D).

At the next status hearing, the prosecutor reported that the lab testing of some of the edibles—specifically, the Sweed 'n Loud cereal bars—had confirmed the presence of THC. The judge then addressed Slater's contention that the prosecutor had induced his plea. After a lengthy colloquy, she rejected the argument, concluding that Slater had entered his guilty pleas knowing that the marijuana and edibles would be considered in the calculation of the sentencing range. Finally, the judge reiterated that her obligation to correctly calculate the Guidelines range justified her decision to permit the late objection to the PSR.

Up to this point in the case, Slater had been represented by an assistant public defender. A few weeks after this status hearing, his attorney moved to withdraw based on a possible conflict of interest arising from her office's prior representation of Slater in another case. The judge granted the motion and appointed a new lawyer.

In the weeks that followed, the probation office prepared a revised PSR using the higher 1:167 drug-conversion ratio

for the edibles. The new calculation was limited to the Sweed 'n Loud cereal bars, for which lab testing was available; the revised report did not include the gummies or the bag of marijuana in the calculation. At 859.1 grams, the cereal bars contributed 143.47 kilograms to the total converted drug weight, which when added to the undisputed 50.35 kilograms of crack cocaine produced a combined converted total drug weight of 193.82 kilograms—nearly four times the original figure. That new total boosted the sentencing range for counts one and two to 63 to 78 months. Slater did not object to the new calculations.

With that, and nearly a year after the originally scheduled sentencing date, the case finally proceeded to sentencing. At the start of the hearing, Slater withdrew his remaining objections, noting that none of them would alter the new Guidelines range. And he agreed with the prosecutor that the revised PSR accurately calculated the range. The judge adopted the revised calculations and the new range. The government then recommended a within-Guidelines sentence of 72 months on counts one and two and the required consecutive term of 60 months on count three.

Slater's attorney asked for a below-Guidelines sentence of time served—about 28 months—on counts one and two, noting that the 1:167 ratio for THC had driven the increase in the Guidelines range. He argued that the policy underlying the higher ratio was not scientifically based but instead was a product of the federal government's incoherent approach to marijuana regulation, which he labeled a "political football." The judge invited the government to respond to this policy critique of the Guidelines. The prosecutor agreed that the THC ratio was responsible for the increased Guidelines

range but declined to comment on the defense attorney's policy argument.

The judge acknowledged the effect of the harsher THC ratio but said she found it hard to evaluate whether the ratio accurately reflected "the danger of that drug to society." She said she did not have sufficient information to appropriately assess the defense attorney's policy argument. But she agreed that a downward variance was warranted because the THC ratio treated Slater's possession of the edibles "quite severely" and was "driving the train here." She did not agree, however, with the significant variance Slater's counsel had suggested. The judge settled on a below-Guidelines prison term of 60 months on counts one and two and the mandatory consecutive 60-month term on count three, for a total of 120 months in prison.

## II. Discussion

Slater raises two arguments on appeal, one procedural and one substantive. Both center on the application of the 1:167 ratio to the THC-infused cereal bars. As a procedural matter, he challenges the judge's decision to entertain the government's untimely objection to the PSR. If we disagree, he argues that the judge should have applied the 1:1 ratio to the cereal bars.

### A. "Good Cause" for Late PSR Objection

Rule 32(e)(2) of the Federal Rules of Criminal Procedure requires the probation office to distribute the defendant's PSR to the parties "at least 35 days before sentencing." From there, the parties have 14 days to submit written objections. FED. R. CRIM. P. 32(f)(1) (requiring the parties to submit objections in writing "[w]ithin 14 days" of receiving the report). Though strict, this deadline is not without exception:

the judge "may, for good cause, allow a party to make a new objection at any time before sentence is imposed." *Id.* R. 32(i)(1)(D); *see id.* R. 32(b)(2) (A judge "may, for good cause, change any time limits prescribed" in Rule 32.).

Slater contests the judge's decision to permit the government's eleventh-hour objection. As with other good-cause findings, we review a good-cause determination under Rule 32(i)(1)(D) for an abuse of discretion. *United States v. Acox*, 595 F.3d 729, 731 (7th Cir. 2010) ("[W]hether the circumstances add up to 'good cause' is a question committed to the district court's discretion," so our review "is deferential."); *see United States v. Henderson*, 159 F.4th 213, 218 (4th Cir. 2025); *United States v. Kleinman*, 880 F.3d 1020, 1039 (9th Cir. 2017).[2]

The judge reasonably exercised her discretion here. As she properly recognized, she had "the ultimate responsibility" to ensure that the Guidelines range was correct. *Rosales-Mireles v. United States*, 585 U.S. 129, 134 (2018). In fact, failing to do so risked serious procedural error. *See Gall v. United States*, 552 U.S. 38, 51 (2007). And there's no question that the issue at the heart of the prosecutor's objection materially affected the range here; as the PSR's initial and revised calculations bear out, swapping the 1:1 for the

---

[2] At times Slater's briefs imply a challenge to the continuance of his sentencing hearing. Our review of that ruling is similarly deferential; we will overturn a continuance decision "only for an abuse of discretion and a showing of actual prejudice." *United States v. Smith*, 562 F.3d 866, 871 (7th Cir. 2009) (quotation omitted). Thus, regardless of how we frame our analysis, the outcome is the same. For simplicity's sake, we focus our attention on the judge's good-cause finding.

1:167 ratio increased Slater's advisory sentencing range by about three years.

To be sure, the judge did not specifically couch her ruling in good-cause terms. Ideally, she would have done so. But "good cause" is a "uniquely flexible," fact-specific, and "capacious" concept. *United States v. UCB, Inc.*, 970 F.3d 835, 846 (7th Cir. 2020); *see Good Cause*, BLACK'S LAW DICTIONARY (12th ed. 2024) ("A legally sufficient reason."). And given our highly deferential standard of review, we see no reason to second-guess the judge's exercise of discretion.

Slater resists this conclusion on two grounds. First, he argues that if *every* Guidelines-calculation error inevitably satisfied the good-cause standard, then Rule 32's 14-day deadline and grant of discretion to hear late objections "would be meaningless." *United States v. Chung*, 261 F.3d 536, 539 (5th Cir. 2001). Fair enough. It's worth emphasizing that because the good-cause determination is committed to the court's discretion, a judge is not "obliged to entertain" an untimely objection to a PSR. *Id.*; *see United States v. Overholt*, 307 F.3d 1231, 1251–52 (10th Cir. 2002). Here, although the judge emphasized her "duty" to correctly calculate the Guidelines range, there's no indication that she thought she had no discretion at all. On the contrary, she expressly acknowledged that the decision was a discretionary one.

Second, Slater sketches an argument about waiver. More specifically, he contends that the government waived its objection by declining in the first instance to submit the cannabis edibles for lab testing and then later expressing agreement with the drug-conversion calculation in the initial PSR.

The waiver argument is misplaced. As just explained, Rule 32—not waiver doctrine—governs PSR objections, giving district judges the discretion to permit late objections "for good cause." FED. R. CRIM. P. 32(b)(1), (i)(1)(D). No doubt some changes in litigation position may undercut, or even foreclose, a finding of good cause. But here, it's far from clear that the prosecutor disclaimed application of the 1:167 ratio. The record reflects uncertainty on the part of all parties, not to mention the judge herself, about the proper treatment of the cannabis edibles.

The prosecutor's initial position turned out to be mistaken. After hearing from both sides, the judge reasonably exercised her discretion to permit the government's late objection. We see no legal misstep in that decision, which was otherwise well within her discretion. Slater's procedural argument fails.

## B. Drug-Conversion Ratio

On the merits Slater argues that the 1:167 ratio does not apply to the cannabis edibles. His argument is new on appeal and rests entirely on a dissent from the denial of en banc rehearing in a case from the Fifth Circuit. *See United States v. Koss*, 831 F.3d 259 (5th Cir. 2016) (Dennis, J., dissenting from denial of reh'g en banc). Briefly, the dissenting judges in *Koss* posited that the harsh 1:167 ratio applies only to "pure, isolated organic or synthetic THC." *Id.* at 261. Otherwise, because "[a]ll cannabis-derived substances contain THC," the government could subject *any* cannabis derivative—even marijuana itself—to the heightened ratio. *Id.* And that, the dissent argued, would vitiate § 2D1.1's careful scheme, which sets forth specific ratios for marijuana

and cannabis (1:1); cannabis resin and hashish (1:5); and hashish oil (1:50).

Slater emphasizes that the government never proved that the Sweed 'n Loud cereal bars contained organic or synthetic THC. Drawing on the reasoning in the *Koss* dissent, he argues that the converted weight for the cereal bars should have been calculated using the generic 1:1 ratio for marijuana and cannabis, not the 1:167 ratio for THC and THC mixtures. § 2D1.1 app. n.8(D).

This argument was waived, so we need not consider it. Recall that at the start of the sentencing hearing, Slater withdrew all outstanding objections to the PSR. Then, when the judge announced the new Guidelines range and invited the parties to state any further objections, Slater expressly agreed with the government that the probation office had correctly calculated the new range. That is a "textbook waiver." *United States v. Coffin*, 23 F.4th 778, 781 (7th Cir. 2022); *see United States v. Venturella*, 585 F.3d 1012, 1019 (7th Cir. 2009) ("[T]he withdrawal of an objection generally results in a waiver of that argument on appeal.")

Even if this argument was forfeited rather than waived, Slater has not met his burden to win reversal on plain-error review. A plain error is one that is "clear or obvious" and not "subject to reasonable dispute." *United States v. Harris*, 102 F.4th 847, 852 (7th Cir. 2024) (quoting *Puckett v. United States*, 556 U.S. 129, 135 (2009)). A novel interpretation of the marijuana conversion ratios in the Sentencing Guidelines—one that neither we nor any of our sister circuits has embraced—does not satisfy the plain-error standard.

AFFIRMED