RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 17a0218p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————

GIASSON AEROSPACE SCIENCE, INC.; GIASSON DESIGN
INC.,

*Plaintiffs-Appellants*,

*v.*

RCO ENGINEERING INC.,

*Defendant-Appellee*.

┐
│
│
│
│
│
> No. 16-1769
│
│
│
│
│
┘

———————

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 2:14-cv-11358—Robert H. Cleland, District Judge.

Argued: August 3, 2017

Decided and Filed: September 20, 2017

Before: NORRIS, SUHRHEINRICH, and GRIFFIN, Circuit Judges.

———————

## COUNSEL

**ARGUED:** Michael H. Perry, FRASER, TREBILCOCK, DAVIS & DUNLAP, P.C., Lansing, Michigan, for Appellants. A. Michael Palizzi, MILLER CANFIELD PADDOCK AND STONE, P.L.C., Detroit, Michigan, for Appellee. **ON BRIEF:** Michael H. Perry, FRASER, TREBILCOCK, DAVIS & DUNLAP, P.C., Lansing, Michigan, for Appellants. A. Michael Palizzi, Caroline B. Giordano, MILLER CANFIELD PADDOCK AND STONE, P.L.C., Detroit, Michigan, for Appellee.

---

**OPINION**

---

GRIFFIN, Circuit Judge.

Plaintiffs Giasson Aerospace Science, Inc. and Giasson Design Inc. (collectively referred to as "Giasson") appeal the district court's dismissal of their complaint against defendant RCO Engineering Incorporated pursuant to Federal Rule of Civil Procedure 12(b)(6). Giasson seeks to undo a settlement agreement the parties reached to resolve prior litigation between them, and argues this case should proceed as an independent action in equity for relief from judgment as permitted under Federal Rule of Civil Procedure 60(d)(1), the rule's so-called "savings clause." However, relief pursuant to such an action is "available only to prevent a grave miscarriage of justice." *United States v. Beggerly*, 524 U.S. 38, 47 (1998). Because Giasson's allegations do not satisfy that "demanding standard[,]" *id.*, we affirm the district court's judgment.

I.

Giasson and RCO were once in business together, working to secure a contract to make airline seats for a luxury jet manufacturer. Then, according to Giasson, RCO cut it out of the deal, so Giasson sued RCO for breach of contract among other claims. During discovery, and in anticipation of settlement talks, Giasson submitted interrogatories to RCO requesting pricing and sales information for the airline seats RCO would be selling to the jet manufacturer. RCO's counsel acknowledged via email that Giasson "need[ed] the [financial] information to make an informed decision as to settlement[,]" and directed Giasson to its interrogatory responses.

In those responses, RCO disclosed its gross sales price, projected sales, and net profit information for its power, manual, and double airline seats. However, RCO noted that "the sales price may be subject to change as [the jet manufacturer] adjusts the technical requirements for the seats." As for its projected gross seat sales, RCO warned that its "estimates are speculative and subject to change." And RCO similarly advised that its estimated net profits "are speculative and subject to change as costs increase, for example." The parties entered into settlement talks

soon after.  They settled the dispute in June 2010, and the district court entered a consent order of dismissal.

Under the settlement's terms, RCO agreed to pay Giasson a running royalty for ten years. For the first five years, RCO would pay Giasson 3.5% of the net sales price of each manual and power seat sold.  For the remaining five years, Giasson would receive 4% of the net sales price of each manual, power, and double seat sold.  The agreement defined a seat's net sales price as its gross sales price minus applicable taxes, and normal shipping and delivery costs.  "For the avoidance of doubt," the parties agreed to fixed per-seat gross and net sales prices—thereby factoring out unpredictable market dynamics.

The parties executed the agreement without issue until 2014, when Giasson became aware that RCO was charging higher gross sales prices for two types of seats than the fixed prices the parties agreed to.  Specifically, a 2011 invoice revealed a higher gross sales price for one power seat, and a 2014 invoice showed a higher gross sales price for one manual seat. Giasson inferred from these two invoices that RCO misrepresented seat pricing information during settlement talks, thereby cheating Giasson out of greater royalty payments.

Giasson brought this new lawsuit against RCO raising four claims.  Thereafter, RCO filed a motion to dismiss, and the district court made short work of Giasson's claims for breach of contract, specific performance, and silent fraud.[1]  However, the district court declined to immediately dismiss Giasson's claim of fraud in the inducement.  In so ruling, the district court underscored that RCO never represented "the future prices of aircraft seats sold to [the jet manufacturer] would remain static."  Accordingly, "the [discovery] inquiry going forward w[ould] be extremely narrow" because "[t]he underlying financial information behind RCO's interrogatory responses will quickly confirm or deny their veracity at the time they were made."

Discovery continued.  After a follow-up status conference, the district court ordered supplemental briefing on the question of whether it should adjudicate the remaining claim under Federal Rule of Civil Procedure 60.  Following the briefing, the district court dismissed the case,

---

[1]Giasson does not challenge these decisions on appeal.

ruling that Giasson's allegations did not rise to the level of a grave miscarriage of justice under Rule 60(d)(1). Giasson timely appeals.

## II.

As a threshold matter, the parties dispute the proper standard of review. This court reviews de novo a district court's decision to grant a motion to dismiss a complaint pursuant to Rule 12(b)(6). *Linkletter v. W. & S. Fin. Grp., Inc.*, 851 F.3d 632, 637 (6th Cir. 2017). RCO maintains, however, that abuse of discretion review is appropriate here because the district court dismissed a Rule 60(d) equity action, citing *Barrett v. Secretary of Health & Human Services*, 840 F.2d 1259, 1263 (6th Cir. 1987), and *Mitchell v. Rees*, 651 F.3d 593, 595 (6th Cir. 2011). Giasson notes that neither of those actions was dismissed pursuant to Rule 12(b)(6). Because its independent action was dismissed under that rule, Giasson maintains de novo review is required, relying on *Herring v. United States*, 424 F.3d 384, 389–90 (3d Cir. 2005), and *Computer Leasco, Inc. v. NTP, Inc.*, 194 F. App'x 328, 333 (6th Cir. 2006). We need not decide the issue, however, because Giasson's claim fails under either standard.

## III.

"In seeking to undo this final judgment, [Giasson] faces a steep uphill climb." *Cummings v. Greater Cleveland Reg'l Transit*, 865 F.3d 844, 845 (6th Cir. 2017). Rule 60 "prescribes the exclusive methods by which federal judgments may be attacked[.]" *George P. Reintjes Co., Inc. v. Riley Stoker Corp.*, 71 F.3d 44, 46 (1st Cir. 1995); *see also Computer Leasco, Inc.*, 194 F. App'x at 334 (Rule 60 is "a litigant's exclusive avenue when seeking relief from a [federal] judgment."). The rule provides for "Relief from a Judgment, Order, or Proceeding" by motion (Part (b)) or by independent action (Part (d)).**[2]** Typically, an aggrieved party seeking relief on the ground that the opposing party committed fraud will file a motion in the original action under Rule 60(b)(3), which provides that "the court may relieve a party or its legal representative from a final judgment, order, or proceeding for . . . fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party[.]" Fed. R. Civ. P. 60(b),

---

**[2]**In 2007, Rule 60's former Part (b) was separated into Parts (b), (c), (d), and (e) "as part of the general restyling of the Civil Rules to make them more easily understood." Notes on 2007 amdt. to Fed. R. Civ. P. 60. The language of the current Part (d) was formerly contained in Part (b).

(b)(3). But such relief must be sought within one year of the original judgment. Fed. R. Civ. P. 60(c)(1).

Because Giasson filed its new lawsuit four years after the original judgment, it could seek relief on fraud grounds only via "an independent action to relieve a party from a judgment, order, or proceeding" pursuant to Fed. R. Civ. P. 60(d)(1). "[T]he reference to 'independent action' in the saving clause is to what had been historically known simply as an independent action in equity to obtain relief from a judgment." *Barrett*, 840 F.2d at 1262–63 (quoting 11 C. Wright & A. Miller, Federal Practice & Procedure § 2868, at 237–38 (1973)). The rule therefore "does not limit a court's power to . . . entertain" such an action regardless of the passage of time. Fed R. Civ. P. 60(d), (d)(1).

## IV.

Giasson maintains that the district court should have "entertain[ed]" its independent action. However, such an independent action is available only under unusual and exceptional circumstances to prevent a "grave miscarriage of justice." *See Mitchell*, 651 F.3d at 595; *see also Barrett*, 840 F.2d at 1263. Relief is "reserved for those cases of injustices which, in certain instances, are deemed sufficiently gross to demand a departure from rigid adherence to the doctrine of res judicata." *Beggerly*, 524 U.S. at 46 (citation and internal quotation marks omitted). In other words, the injustice must be so severe that enforcement of the original judgment would be "manifestly unconscionable." *Mitchell*, 651 F.3d at 599 (citing *Pickford v. Talbott*, 225 U.S. 651, 657 (1912)). These requirements stem from the "deep rooted policy in favor of the repose of judgments." *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 244 (1944); *see also Blue Diamond Coal Co. v. Trs. of UMWA Combined Benefit Fund*, 249 F.3d 519, 524 (6th Cir. 2001). "This is especially true for settlement agreements . . . [otherwise] the key virtue of settling cases—letting the parties move on after they each get some of what they want—would be lost." *Cummings*, 865 F.3d at 845.

Few aggrieved parties have met this demanding standard, and, as such, a "grave miscarriage of justice" in the Rule 60 context has been defined largely by what it is not. *See Computer Leasco, Inc.*, 194 F. App'x at 335 (collecting cases); *see also Mitchell*, 651 F.3d at

597–98. However, RCO relies on three cases involving claims of misconduct during settlement negotiations that are instructive here. First, in *Info-Hold, Inc. v. Sound Merchandising, Inc.*, this court rejected a claim very similar to Giasson's that was brought as a Rule 60(b)(3) motion.[3] 538 F.3d 448, 454–58 (6th Cir. 2008). The *Info-Hold* plaintiff, like Giasson, alleged the defendant fraudulently concealed product information in interrogatory responses and during settlement talks, resulting in a fraudulently induced agreement and smaller royalty payment for the plaintiff. *Id.* at 454–55. This court denied relief because the plaintiff "failed to establish by clear and convincing evidence that [the defendant] either affirmatively misrepresented the features of its [product] or deliberately breached a duty to disclose such information." *Id.* at 456.

However, to proceed with an independent action in equity "the level of fraud or misconduct" alleged must be "several notches of severity above that required for a Rule 60(b)(3) motion[.]" *Ballew v. U.S. Dep't of Just.*, 244 F.3d 138, No. 99–11308, 2000 WL 1901696, at *2 (5th Cir. 2000) (unpublished table decision); *see also Beggerly*, 524 U.S. at 46 ("If relief may be obtained through an independent action in a case such as this, where the most that may be charged against the Government is a failure to furnish relevant information that would at best form the basis for a Rule 60(b)(3) motion, the strict 1-year time limit on such motions would be set at naught."); *Turner v. Pleasant*, 663 F.3d 770, 777 (5th Cir. 2011); *Computer Leasco, Inc.*, 194 F. App'x at 335 (independent actions subject to stricter standard of relief than that applied to Rule 60(b)(3) motions). As the Supreme Court has explained, only a plausible claim alleging an injustice "sufficiently gross" to merit departing from the strict doctrine of res judicata will compel relief in such cases. *Beggerly*, 524 U.S. at 46.

RCO relies on a second case, *United States v. Beggerly*, to establish that Giasson's claim does not allege a sufficiently gross injustice to merit relief. In that case, the Beggerly family entered into a settlement with the United States Government quieting title to disputed land in favor of the latter in return for a sizeable payment. 524 U.S. at 39. Like Giasson, the family

---

[3]To prevail on a Rule 60(b)(3) motion, the moving party must "establish[] the grounds for such relief by clear and convincing evidence." *Info-Hold, Inc.*, 538 F.3d at 454. For the purpose of evaluating such motions, this court defines "fraud" as "the knowing misrepresentation of a material fact, or concealment of the same when there is a duty to disclose, done to induce another to act to his or her detriment." *Id.* at 456 (citations omitted). Had Giasson timely filed a Rule 60(b)(3) motion in the original action, it would have had to show, by clear and convincing evidence, that RCO's conduct "was fraudulent under this general common law understanding" of the term. *See id.*

filed an independent action in federal court several years later to set aside the settlement, citing new evidence. *See id.* at 39, 40–41. In denying relief, the Court explained the family's allegation that the government withheld information during the original action would have, at most, "form[ed] the basis for a Rule 60(b)(3) motion," *id.* at 46, and "it should [have been] obvious that [the family's] allegations d[id] not nearly approach th[e] demanding" "grave miscarriage of justice" standard.[4] *Id.* at 47.

Third and finally, RCO finds support in *Ballew v. United States Department of Justice* in which the Court of Appeals for the Fifth Circuit affirmed the dismissal of an independent equity action for failure to state a claim. 2000 WL 1901696, at *1. Ballew filed a *qui tam* lawsuit against his employer. *Id.* The Department of Justice intervened in the action, and agreed to give Ballew a 15% share of whatever it recovered. *Id.* The case settled, but, like Giasson, Ballew filed an independent action a few years later seeking to set the agreement aside. *Id.*

Based on documents Ballew obtained via the Freedom of Information Act, he accused the government of making misrepresentations and withholding information during settlement negotiations. *Id.* at *3. Like Giasson, Ballew argued he was thus entitled to a much larger amount than he received under the settlement. *Id*. at *1. The Fifth Circuit ruled that the circumstances, however, "d[id] not rise to the level of a grave miscarriage of justice even if the government was not fully forthcoming to Ballew" nor were his allegations sufficient to "ma[k]e out a claim there ha[d] been the sort of grave miscarriage of justice contemplated by the Supreme Court." *Id.* at *3. This was because "[e]ven prior to *Beggerly* it was established that 'fraud cognizable to maintain an untimely independent attack upon a valid and final judgment has long been regarded as requiring more than common law fraud.'" *Id.* (quoting *George P. Reintjes Co. Inc.*, 71 F.3d at 48).

---

[4]The *Beggerly* Court, in searching for an illustrative example of a "grave miscarriage of justice" in the Rule 60 context, had to reach back over one hundred years to 1891. *Beggerly*, 524 U.S. at 47. In that 1891 case, *Marshall v. Holmes*, a forged letter was used to obtain a default judgment in a Louisiana state court proceeding. *Beggerly*, 524 U.S. at 47 (citing *Marshall v. Holmes*, 141 U.S. 589, 596 (1891)). An independent action to enjoin enforcement was therefore justified because the defendant was completely prevented, as a result of the fraud, from presenting any defense to the complaint. *Id.* Giasson's allegations, like the Beggerly family's, are clearly not of the same magnitude.

Read together, these cases persuasively support RCO's position that Giasson's allegations of misrepresentation during settlement negotiations are of insufficient magnitude to meet the demanding "grave miscarriage of justice" standard. Indeed, the circumstances in which relief is appropriate under this standard involve far greater injustices than Giasson's recovery of less-than-ideal royalty payments pursuant to the terms of an agreement between two sophisticated, represented parties. Giasson cites no contrary case.[5]

A party may resort to an independent equity action only in unusual and exceptional circumstances. *See Barrett*, 840 F.2d at 1263. Here, Giasson seeks to circumvent Rule 60(b)'s one-year time limit and force renegotiation of a nearly seven-year-old settlement reached between sophisticated, represented parties, without any evidence of intentional misrepresentation on RCO's part. And Giasson would like to do so despite being on notice prior to settlement talks that the pricing information RCO disclosed "may be subject to change," and having the opportunity to pursue discovery regarding the veracity of RCO's interrogatory responses at the time they were made.[6] Under the circumstances of this case, "it surely would work no grave miscarriage of justice, and perhaps no miscarriage of justice at all, to allow the [settlement] to stand." *Beggerly*, 524 U.S. at 47 (internal quotation marks omitted). Accordingly, we conclude that the district court did not err in refusing to grant Giasson relief pursuant to an independent equity action.

---

[5]Giasson cites no case where this court has found a grave miscarriage of justice and granted relief in an independent action. To the extent it relies on the Fifth Circuit's ruling in *Turner v. Pleasant*, such reliance is misplaced because *Turner* did not involve a settlement, and its historic context sets it apart. The *Turner* plaintiffs claimed the district court judge who presided over the bench trial in their personal injury action, and entered judgment in favor of the defendant, went on frequent hunting trips with defense counsel and one of the defendant's expert witnesses. 663 F.3d at 773–74. Crucial was the fact that the United States Senate had removed that judge from office after a misconduct investigation. *Id.* at 777. The Fifth Circuit held that the plaintiffs' fraud claim was therefore plausible *and* of a sufficient magnitude to merit relief from the original judgment. *Id*. Here, however, there is no allegation akin to judicial misconduct.

[6]Discovery on this question apparently did not yield any evidentiary support for Giasson's misrepresentation allegations. The two RCO invoices and email correspondence Giasson relies on here do not even suggest fraud, let alone "fraud . . . of a greater order of magnitude." *Turner*, 663 F.3d at 777. The 2011 and 2014 invoices establish only that the gross sales price had in fact changed by 2011 for the power seat, and by 2014 for the manual seat, as RCO warned was possible. They shed no light on whether RCO intentionally gave misleading pricing information before or during the 2010 settlement negotiations, or even on whether that information was inaccurate when RCO disclosed it. Nor does RCO's recognition via email that Giasson "need[ed] the [financial] information to make an informed decision as to settlement." There is simply no evidence in this record that RCO ever represented that the pricing information it voluntarily disclosed in the interrogatory responses was final, or would remain static, or that RCO knew it was inaccurate when first disclosed to Giasson.

V.

For these reasons, we affirm the district court's judgment.