**NOT RECOMMENDED FOR PUBLICATION**
**File Name: 18a0076n.06**

**No. 17-5554**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| D & S REMODELERS, INC., | ) | **FILED** |
| | ) | Feb 14, 2018 |
| Plaintiff-Appellant, | ) | DEBORAH S. HUNT, Clerk |
| | ) | |
| v. | ) | |
| | ) | ON APPEAL FROM THE |
| WRIGHT NATIONAL FLOOD INSURANCE | ) | UNITED STATES DISTRICT |
| SERVICES, LLC, formerly known as Fidelity | ) | COURT FOR THE MIDDLE |
| National Insurance Services, LLC; COLONIAL | ) | DISTRICT OF TENNESSEE |
| CLAIMS CORPORATION, | ) | |
| | ) | |
| Defendants-Appellees. | | |

BEFORE: GRIFFIN, KETHLEDGE, and BUSH, Circuit Judges.

GRIFFIN, Circuit Judge.

In this dispute involving flood insurance, plaintiff D & S Remodelers, Inc. (D & S), appeals the district court's dismissal of its claims against insurance adjuster Colonial Claims Corporation (Colonial) and flood insurance provider Wright National Flood Insurance Company (Wright). Finding all of plaintiff's claims preempted by the National Flood Insurance Act of 1968 (NFIA), 42 U.S.C. § 4001, *et seq.*, the district court granted judgment in favor of defendants pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(c). Plaintiff now appeals. For the reasons that follow, we affirm.

I.

Following Hurricane Sandy, the Foundry at Hunters Point Condominiums (the Foundry) needed substantial work to repair damage to its structure and interior. D & S, a company that

performs remediation services, was working at a nearby building when "a representative of the [d]efendants" approached D & S to request emergency floodwater-pumping services at the Foundry. D & S and the Foundry entered into an agreement that failed to specify the scope of the services or materials that D & S would provide. D & S characterized this agreement as an "open services" contract governing their relationship. The contract stated that D & S would provide services and materials to the Foundry and, in return, the Foundry would compensate D & S for its work. Additionally, the agreement included a "Responsibility of Payment" provision, in which the Foundry agreed to remit to D & S any payments made by an insurer.

Pursuant to this general agreement, D & S provided flood remediation services from October 2012 to January 2013. In the beginning, D & S merely pumped and removed floodwater from the building, set up drying equipment, and provided temporary power and lighting for the Foundry's common areas. But after a week or so, D & S representatives met with both Foundry representatives and individual unit owners to discuss additional services. Also present at this meeting was a representative of Colonial, an insurance adjuster, which D & S alleges was acting as an agent of Wright, the company that sold flood insurance to the Foundry. All involved agreed that D & S would not provide any additional services until an adjuster and a Wright representative approved the work.

At a second meeting two days later, "representatives of [d]efendants" instructed D & S to perform additional remediation and repair services that were substantially broader in scope than the initial emergency services. These newly negotiated services included the decontamination and repair of large parts of the Foundry's structures, such as the parking garage, mechanical rooms, elevator shafts, and other common areas. D & S alleges that Wright, through its agent Colonial, agreed to pay D & S for all of the services and materials D & S provided. Plaintiff also

alleges that Colonial separately made numerous oral agreements to pay D & S for all of the services provided, and this, D & S submits, "represented that any insurance claim submitted to The Foundry's insurer, or available disaster relief fund, would be accepted and full payment would be made to D & S."

D & S calculates that it provided over $500,000 in negotiated services to the Foundry by the time it completed its work in January of 2013. At this point, D & S and the Foundry defendants worked together to get their claims satisfied under the Foundry's flood insurance policy. Despite these efforts, D & S was not paid.

D & S filed a lawsuit against the Foundry, the unincorporated association that runs it, and eight individual defendants comprising the unincorporated association. This complaint raised two counts: (1) breach of contract and (2) unjust enrichment.

Thereafter, D & S filed an amended complaint adding defendants New Bedford Management Corporation, Wright, and Colonial to the lawsuit. In its amended complaint, D & S raised a host of claims against various defendants, only five of which are relevant on appeal: (1) breach of contract against Wright; (2) breach of contract against Colonial; (3) unjust enrichment against all defendants; (4) intentional misrepresentation and fraudulent inducement against all defendants; and (5) negligent misrepresentation against Colonial and Wright.

While the amended complaint also raised numerous claims against the Foundry, the Board, and other defendants connected to the Foundry (including New Bedford Management Corporation), these claims were dismissed by stipulation after those defendants and D & S entered into a confidential settlement.

Wright filed a motion to dismiss under Rule 12(b)(6), arguing that the NFIA preempted D & S's claims. The district court granted Wright's motion. The court reasoned that, pursuant

to the standard flood insurance policy under the NFIA, "all disputes arising from the handling of any claim under [a flood policy] are governed exclusively by the flood insurance regulations issued by [the Federal Emergency Management Agency (FEMA)], the [NFIA], and Federal common law." Furthermore, it emphasized that the terms of the policy "expressly provide that, while a [flood insurance] carrier may authorize a private third-party adjuster to assist with the investigation and handling of claims made under a [flood insurance] policy, the adjuster shall not be authorized to approve or disapprove claims or to tell the insured whether claims will be approved." The court then noted that these legal principles were not disputed, but D & S argued that this analysis did not apply because it was not the *insured* under the policy, and its claims were not based upon the policy. Instead, D & S asserted that its claims against Wright were based upon a wholly separate transaction between Colonial and D & S that bound Wright to pay for D & S's work on the Foundry's behalf. The district court disagreed, ruling the alleged representations made by Colonial—that Wright would pay D & S for its services under the flood insurance policy—were in the context of adjusting the policy, and that the NFIA preempts all such state law claims. The court also rejected D & S's argument that its claims were more akin to insurance procurement-based causes of action, which the NFIA does not preempt. Instead, the district court ruled that D & S's claims were policy-handling claims that failed to state a claim on which relief could be granted against Wright.

Defendant Colonial also answered the amended complaint and then moved for judgment on the pleadings under Rule 12(c), reiterating the same grounds for dismissal asserted by Wright. Relying in part on its prior order and opinion, the district court granted Colonial's motion, ruling that preemption equally precluded D & S's claims against Colonial. Although D & S argued that "the NFIA's preemption of claims by policyholders against [flood] insurers does not apply to

claims between third parties to [a flood] insurance agreement that do not arise from the insurance policy and do not implicate United States Treasury funds," the court held that all of D & S's claims arose out of the handling of the Foundry's flood insurance policy. As explained in its prior opinion, the district court concluded that because this was not an insurance *procurement* action, NFIA preemption applied. On these grounds, the district court dismissed all of D & S's claims against Colonial.

D & S now appeals the district court's judgments in favor of Wright and Colonial.

## II.

We review de novo a district court's dismissal of a complaint under Rule 12(b)(6). *Giasson Aerospace Science, Inc. v. RCO Eng'g Inc.*, 872 F.3d 336, 338 (6th Cir. 2017). Under that rule, the district court may dismiss the plaintiff's complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). We accept the truth of all of plaintiff's well-pleaded material allegations and only "affirm the district court's grant of the motion . . . if the moving party is entitled to judgment as a matter of law." *Wilmington Tr. Co. v. AEP Generating Co.*, 859 F.3d 365, 370 (6th Cir. 2017). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556, 570 (2007)).

We also review an order dismissing an action under Rule 12(c) of the Federal Rules of Civil Procedure de novo. *W.J. O'Neil Co. v. Shepley, Bulfinch, Richardson & Abbott, Inc.*, 765 F.3d 625, 629 (6th Cir. 2014). Under this subrule, "[a]fter the pleadings are closed—but

early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). Judgment on the pleadings is reviewed just as a Rule 12(b)(6) motion to dismiss, *Barany-Snyder v. Weiner*, 539 F.3d 327, 332 (6th Cir. 2008), wherein, "all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment" as a matter of law. *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577 581-82 (6th Cir. 2007) (quoting *S. Ohio Bank v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 479 F.2d 478, 480 (6th Cir. 1973)).

III.

The National Flood Insurance Program was established by the National Flood Insurance Act of 1968, 42 U.S.C. § 4001, *et seq.*, and has two components: (1) a system for providing flood insurance, and (2) a unified national plan for flood management. 42 U.S.C. §§ 4001(b) and (c). Congress authorized FEMA, which administers the program, to "prescribe regulations establishing the general method or methods by which proved and approved claims for losses may be adjusted and paid for any damage to or loss of property which is covered by flood insurance." 42 U.S.C. § 4019(a); *see also Harris v. Nationwide Mut. Fire Ins. Co.*, 832 F.3d 593, 596 (6th Cir. 2016). One of these FEMA regulations sets forth the "Standard Flood Insurance Policy," *see, e.g.*, 44 C.F.R. Pt. 61, App. A(3), which provides all of the terms of the insurance coverage and is the only flood insurance policy available or permitted under the NFIA. *See Gallup v. Omaha Prop. & Cas. Ins. Co.*, 434 F.3d 341, 342 (5th Cir. 2005). Another FEMA regulation created the "Write Your Own" program. 44 C.F.R. § 62.23–.24. This "Write Your Own" program allows private insurance companies to issue flood insurance policies as fiscal agents of the federal government, *Neuser v. Hocker*, 246 F.3d 508, 510 (6th Cir. 2001), with

reimbursements for valid claims coming the United States Treasury, *Gibson v. Am. Bankers Ins. Co.*, 289 F.3d 943, 947 (6th Cir. 2002).

The issue before this court is the preemptive effect of that federal statutory and regulatory scheme to the claims raised by D & S. Under the Supremacy Clause of the United States Constitution, "state laws that 'interfere with, or are contrary to the laws of congress, made in pursuance of the constitution' are invalid." *Wis. Pub. Intervenor v. Mortier*, 501 U.S. 597, 604 (1991) (quoting *Gibbons v. Ogden*, 22 U.S. (9 Wheat) 1, 211 (1824)). When determining whether federal law preempts state law, we focus on congressional intent. *Nw. Cent. Pipeline Corp. v. State Corp. Comm'n of Kan.*, 489 U.S. 493, 509 (1989). Federal regulations have the same preemptive effect as federal statutes. *City of New York v. F.C.C.*, 486 U.S. 57, 63 (1988).

In *Gibson v. American Bankers Insurance Company*, we held that the NFIA preempted state law claims relating to the handling or disposition of a flood insurance policy. 289 F.3d at 949–50. Our decision in *Gibson* is consistent with 44 C.F.R. Pt. 61, App. A(3), Art. X, effective December 31, 2000, which provides:

> This policy and all disputes arising from the handling of any claim under the policy are governed exclusively by the flood insurance regulations issued by FEMA, the National Flood Insurance Act of 1968, as amended (42 U.S.C. 4001, *et. seq.*) and Federal common law.[1]

Further, in *Harris v. Nationwide Mutual Fire Insurance Company*, we reiterated the point, noting that "[t]he NFIA indisputably preempts state-law causes of action based on 'the handling and disposition of . . . claims'" relating to a flood insurance policy. 832 F.3d at 596 (quoting *Gibson*, 289 F.3d at 949).

---

[1]Identical language is included in Appendices A(1) and A(2), meaning that all flood insurance policies include the same preemption clause. *See* 44 C.F.R. Pt. 61, App. A(1), Art. IX & App. A(2), Art. IX.

In this regard, we have been careful not to extend the NFIA's preemptive effects beyond that which Congress and the FEMA Administrator intended. In *Harris*, we held that the NFIA did not preempt plaintiffs' state-law procurement claims. 832 F.3d at 594, 597. In reaching this conclusion, we adopted the Fifth Circuit's approach—which distinguishes between claims-handling causes of action and policy *procurement* causes of action—and found that the NFIA does not preempt procurement claims. *Id*. at 597 (citing *Spong v. Fid. Nat'l Prop. & Cas. Ins. Co.*, 787 F.3d 296, 306 (5th Cir. 2015)). We recognized that the United States Treasury bears no responsibility to pay damages for procurement claims, and they present no danger to the federal interests undergirding preemption in the claims-handling context. *Id*. Our court distinguished the two types of claims based on "whether the plaintiff was 'already covered' by [the standard flood insurance policy], or instead was a 'potential future policyholder.'" *Id*. (quoting *Spong, 787 F.3d at 806*). *Thus*, in *Harris* we concluded that the NFIA did not preempt the plaintiffs' claims because they were mere "*potential* future policyholders at the time the alleged wrongs occurred." *Id*. (emphasis added).

In the present case, D & S asserts that the NFIA does not preempt its state-law causes of action because they are akin to procurement claims or to other non-preempted claims based upon an insurer's actions outside of the insurance determination. But the district court correctly rejected this argument. D & S's first amended complaint asserts state-law claims for unjust enrichment, intentional misrepresentation and fraudulent inducement, and negligent misrepresentation against both Wright and Colonial. As the district court noted, (1) D & S never interacted with Wright directly, and (2) by D & S's own allegations, it only interacted with Colonial (allegedly Wright's agent for purposes of the Foundry's flood claims) at two meetings between the Foundry defendants and D & S, at which time the parties discussed the flood

remediation services D & S was to provide. Further, D & S alleges that "in all communications before D & S completed the Foundry Project, D & S dealt exclusively with representatives of Colonial in connection to the involvement of any insurance companies," and that "Colonial represented that any insurance claim submitted to The Foundry's insurer, or available disaster relief fund, would be accepted and full payment would be made to D & S." Thus, the only plausible reading of D & S's allegations against Wright and Colonial is that its state-law claims all relate to the handling of the Foundry's flood claims under the standard flood insurance policy. The NFIA preempts such claims. *Gibson*, 289 F.3d at 949.

Nevertheless, D & S latches on to a particular sentence in *Harris* in support of its position that its claims are procurement claims. In *Harris* we distinguished between procurement and handling claims based on "whether the *plaintiff* was 'already covered' by [a policy], or instead was a 'potential future policyholder'" at the time of the alleged wrong. 832 F.3d at 597 (emphasis added). On the basis of this language, D & S argues that it was not, and has never been, covered by any flood insurance policy and therefore its claims must be like procurement claims not preempted by the NFIA. We disagree.

Plaintiff's argument is nothing more than a rhetorical shell game. *Harris* addressed only the case before it, involving insured plaintiffs rather than a third-party contractor. 832 F.3d at 594-95, 597. Moreover, the standard flood insurance policy preempts state law for "*all disputes arising from the handling of any claim* under the policy." 44 C.F.R. Pt. 61, App. A(3), Art. X (emphasis added). The fact that D & S is not an insured and was never covered by flood insurance is irrelevant; the preemption prescribed by the regulation is not so limited. Because all of D & S's claims necessarily arise from the handling of the Foundry's claims under an existing policy, the district court correctly ruled all of plaintiff's claims are preempted.

Next, D & S argues that its claims are not preempted because the NFIA and the policy afford legal standing to policyholders only, which D & S is unquestionably not. D & S contends that because it is a stranger to the contract, preemption cannot preclude its claims, which are separate from the flood insurance framework. Not so. From the complaint itself, the only reason D & S met with Colonial was because Colonial was adjusting the Foundry's claims under the Foundry's policy with Wright. And D & S requested payment for its work from the flood insurance claim filed by the Foundry. Thus, it is invariably true that D & S's state-law causes of action arise out of the handling of the Foundry's policy with Wright. The plain language of the preemption clause does not limit who is preempted from bringing a state-law claim. Instead, it preempts "all disputes arising from the handling of any claim under the policy," regardless of who the plaintiff may be. *See, e.g.*, 44 C.F.R. Pt. 61, App. A(3), Art. X.

Inconsistent with D & S's position that it is a stranger to the policy, D & S also argues that it is the assignee of the Foundry's flood insurance policy claims. However, plaintiff's assignment claim is prohibited by the plain language of the policy. The policy specifically provides for assignment of claims in limited circumstances only: the insured "may assign this policy in writing when [the insured] transfer[s] title of [its] property to someone else." 44 C.F.R. Pt. 61, App. A(3), Art. VIII(D). D & S does not allege that the Foundry's title has been transferred, let alone to D & S. We interpret these policies strictly, and this court has even rejected substantial compliance with the terms of a flood policy in the past. *Evanoff v. Standard Fire Ins. Co.*, 534 F.3d 516, 521 (6th Cir. 2008). Therefore, D & S's argument that it can pursue claims against Wright and Colonial under an assignment theory is without merit.

In sum, all of D & S's state-law claims arise from the handling of a flood insurance claim under the policy between the Foundry and Wright. Under both the plain language of the

regulation and our caselaw, plaintiff's claims are preempted by the NFIA. Thus, the district court correctly granted Wright's motion to dismiss and Colonial's motion for judgment on the pleadings.

IV.

Finally, D & S argues in the body of its appellate brief that the district court erred in dismissing its contract claims against defendants and holding that (1) Colonial could not have acted as Wright's legal agent as a matter of law, and (2) D & S's complaint did not support any independent contract claims against Colonial. But D & S failed to raise this ground for appeal in its statement of the issues. *See* Brief of the Plaintiff-Appellant at 1 ("D & S respectfully submits that the appropriate issues for review are as follows: . . . Whether the District Court erred in its holding that the NFIA preempts D & S's claims against [Wright], and, . . . [w]hether the District Court erred in its holding that the NFIA preempts D & S's claims against Colonial."). Thus, D & S failed to preserve these issues under the mandate of Federal Rule of Appellate Procedure 28(a)(5), and they are forfeited. *McCarthy v. Ameritech Publ'g, Inc.*, 763 F.3d 488, 494 (6th Cir. 2014).

Furthermore, were we to address the substance of plaintiff's contract claims, we would find them to be without merit. D & S's contract claim against Wright was based entirely on the actions of Colonial, which D & S postures as Wright's agent. The allegations against Wright all pertained to the work D & S was doing for Wright's "insureds." But under the standard flood insurance policy, an insurance adjuster is "not authorized . . . to approve or disapprove claims or to tell you whether we will approve your claim." 44 C.F.R. Pt. 61, App. A(3), Art. VIII(J)(8). As our sister circuits have persuasively held, it is unreasonable as a matter of law to rely on an adjuster's statements during the claims process if they contradict the insurance policy. *See, e.g.,*

*Kerr v. Fed. Emergency Mgmt. Agency*, 113 F.3d 884, 886-87 (8th Cir. 1997). D & S, by its own admission, "does business . . . following natural disasters, such as hurricanes, floods, and tornadoes." And "those who deal with the Government are expected to know the law and may not rely on the conduct of Government agents contrary to law." *Heckler v. Cmty. Health Servs. of Crawford Cty., Inc.*, 467 U.S. 51, 63 (1984). Thus, plaintiff cannot prevail on its contract claim against Wright based on Colonial's actions.

D & S's contract claim against Colonial also fails. D & S readily admits that it must present allegations of a separate agreement—beyond the insurance policy—between it and Colonial to survive judgment on the pleadings on that claim, because it has no standing to assert claims under the insurance policy. But each allegation in the complaint relating to Colonial's conduct and alleging a separate "agreement" notes that these agreements relate to "the Foundry Project." Except for these allegations, which we clearly related to Colonial's work as the adjuster on the Foundry's flood claims, the complaint asserts no factual allegations allowing the district court to find an independent contract between Colonial and D & S. *See Ashcroft*, 556 U.S. at 678. In short, any "agreement" between Colonial and D & S was clearly related to the flood insurance policy, and plaintiff has not alleged any contract claim against Colonial on which relief could be granted.

V.

We affirm the judgments of the district court.