NOT RECOMMENDED FOR PUBLICATION
File Name: 22a0101n.06

No. 21-1496

# UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

CHARLES R. HUNTER,

      Plaintiff-Appellant,

v.

STERLING MORTGAGE AND
INVESTMENT COMPANY and
INTERNAL REVENUE SERVICE,

      Defendants-Appellees.

)
)
)
)
)
)
)
)
)
)
)
)
)

**FILED**
Mar 04, 2022
DEBORAH S. HUNT, Clerk

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE EASTERN
DISTRICT OF MICHIGAN

OPINION

Before: MOORE, WHITE, and BUSH, Circuit Judges.

**KAREN NELSON MOORE, Circuit Judge.** The Internal Revenue Service ("IRS") sued Sterling Mortgage and Investment Company ("Sterling") and Charles Hunter to enforce its tax liens on a property that was purchased by Sterling at a foreclosure sale, but still subject to Hunter's right of redemption. The IRS and Sterling entered into a settlement agreement, and all three parties stipulated to a voluntary dismissal of the case without prejudice. Hunter moved to vacate the stipulated order of dismissal, enforce the federal tax lien, and equitably toll his redemption period. The district court dismissed Hunter's complaint for failure to state a claim. We **AFFIRM** the district court's judgment.

## I. BACKGROUND

In 1999, Hunter received a warranty deed for a residential property ("Lakeside property"). R. 1 (Compl. ¶ 14) (Page ID #4–5). In 2004, he and his wife executed a mortgage, secured by the

Lakeside property, with Wells Fargo Financial America, Inc. *Id.* ¶ 15 (Page ID #5). In 2013 and 2015, the IRS recorded liens on the property, totaling more than $800,000, based on Hunter's failure to pay his taxes. *Id.* ¶¶ 8–13 (Page ID #3–4).

In 2017, after Hunter defaulted on his mortgage, Wells Fargo sold the property to Sterling at a foreclosure sale.[1] *Id.* ¶¶ 16–17 (Page ID #5). Wells Fargo attempted to notify the IRS of the foreclosure sale, but the IRS never received the letter. *Id.* ¶¶ 21–26 (Page ID #6–7); *see* R. 10-3 (USPS Tracking) (Page ID #123–24).

On July 12, 2017, during Hunter's redemption period, the IRS filed a suit against Hunter and Sterling,[2] seeking to enforce its liens on the property. Compl., *United States v. Sterling Mortg. & Inv. Co.*, No. 2:17-cv-12281 (E.D. Mich. 2017), ECF No. 1. On September 15, 2017, all parties stipulated to a voluntary dismissal of the case. Stipulation of Dismissal Without Prejudice, *Sterling*, ECF No. 15. The case was dismissed without prejudice on September 18, 2017. R. 10-4 (2017 Order) (Page ID #126).

Separately, and before the stipulation of dismissal, the IRS and Sterling entered into a settlement agreement, in which Sterling agreed to sell the property and divide the net profits equally with the IRS.[3] R. 1 (Compl. ¶ 33) (Page ID #9). They did not inform Hunter of this settlement agreement or its terms prior to the stipulation of dismissal, and Hunter's counsel did not participate in the settlement negotiations or ask the other parties whether any negotiations had

---

[1]Hunter's right of redemption ran from the date of the sale, April 11, 2017, until October 11, 2017.

[2]The IRS named the State of Michigan and the Oakland County Treasurer as defendants as well, but they are not parties to the instant appeal, so we mention them only in passing.

[3]No copy of the agreement is in the record, but the parties do not dispute its terms. The IRS contends that it ultimately sought to resolve its claims against the property by settlement rather than litigation because there is no controlling precedent on the effectiveness of a foreclosure-sale notice that is timely mailed but possibly lost in transit, as was the case here. Appellees Br. at 6.

taken place. *Id.* ¶ 40 (Page ID #11). The settlement between the IRS and Sterling impacts Hunter because it affects his tax liability: if the IRS receives less money from the property, more of Hunter's tax liability remains for Hunter to satisfy with other assets.

On October 16, 2017, Sterling sued to evict Hunter. *Id.* ¶ 36 (Page ID #10). On October 26, 2017, Hunter sued Sterling and the IRS pursuant to 28 U.S.C. § 2410, seeking a declaratory judgment that the tax liens have priority over Sterling's interest in the property and an order directing the IRS to enforce the tax liens. *See Hunter v. United States* ("*Hunter I*"), No. 17-13494, 2018 WL 2009559 (E.D. Mich. Apr. 30, 2018). The district court construed the suit as an action to quiet title and dismissed it, finding that (1) Hunter lacked standing to sue because his right to redemption had expired on October 11, 2017, meaning that he no longer had any interest in the property; and (2) Hunter failed to show that the government had waived its sovereign immunity under § 2410. *Id.* The Sixth Circuit affirmed on the grounds that the United States has sovereign immunity from a putative quiet-title action such as Hunter's, "where a non-titleholding, non-lien-holding third party sues to gain a derivative benefit" pursuant to § 2410. *Hunter v. United States* ("*Hunter II*"), 769 F. App'x 329, 332–33 (6th Cir. 2019).[4]

Hunter then filed this suit against the IRS and Sterling, asking the court to vacate the stipulation of dismissal in *Sterling*, order an evidentiary hearing about Sterling's and the IRS's allegedly fraudulent concealment of their settlement agreement, and/or equitably toll his right to redeem the property. R. 1 (Compl. at 17) (Page ID #17). The district court granted the defendants' motion to dismiss, finding that Hunter failed to state a claim under either Federal Rule of Civil

---

[4]The court declined to consider Hunter's claim that the settlement agreement amounted to a fraud on the court because Hunter never made this argument before the district court in *Hunter I*. *Hunter II*, 769 F.App'x at 333.

Procedure 60(d)(1), which leaves open the court's power to hear an independent action brought in equity to relieve a party from a prior judgment, or Federal Rule of Civil Procedure 60(d)(3), which permits a party to set aside a judgment for fraud on the court. *Hunter v. Sterling Mortg. & Inv. Co.* ("*Hunter III*"), No. 19-13814, 2021 WL 1087654 (E.D. Mich. Mar. 22, 2021). Hunter timely appealed. R. 16 (Notice of Appeal) (Page ID #156).

## II. ANALYSIS

### A. Standard of Review

"We review de novo a district court's dismissal of a complaint under Rule 12(b)(6)." *EPLET, LLC v. DTE Pontiac N., LLC*, 984 F.3d 493, 499 (6th Cir. 2021). We accept as true well-pleaded factual allegations in the complaint and will affirm a district court's grant of a motion to dismiss only if defendants are entitled to judgment as a matter of law. *Id.*

### B. Rule 60

Rule 60 provides several ways by which a litigant can seek relief from a judgment. First, Rule 60(b) permits litigants to file a motion to seek relief from a final judgment, order, or proceeding. It lists several reasons that can support such a motion including "fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party." Fed. R. Civ. P. 60(b)(3). Subsection 60(b)(3), however, has a one-year time limit. *Id.* 60(c)(1). Hunter brought this suit more than a year after the stipulation of dismissal in *Sterling*, so he instead relied upon Rule 60(d).[5]

---

[5]Jurisdiction in Rule 60 independent actions is ancillary to jurisdiction in the original lawsuit. *United States v. Beggerly*, 524 U.S. 38, 46 (1998). Therefore, no independent waiver of sovereign immunity is required. *Id.* at 42. *See also* 12 *Moore's Federal Practice* § 60.84[1][b] & n.6 (3d ed. 2021) (same); 14 Charles Alan Wright & Helen Hershkoff, *Federal Practice & Procedure* § 3654 & n.87 (4th ed. 2021) (same).

Rule 60(d) provides:

This rule does not limit a court's power to:
> (1) entertain an independent action to relieve a party from a judgment, order, or proceeding;
> (2) grant relief under 28 U.S.C. § 1655 to a defendant who was not personally notified of the action; or
> (3) set aside a judgment for fraud on the court.

Hunter's claims are based on allegations of fraud, and he brought them pursuant to 60(d)(1) and 60(d)(3). Although Rule 60(d)(1) is a general provision, litigants may rely on allegations of fraud to argue that this provision applies. *See Mitchell v. Rees*, 651 F.3d 593, 595 (6th Cir. 2011) (such actions must involve "fraud, accident, or mistake which prevented the defendant in the judgment from obtaining the benefit of his defense" (quotation omitted)). Rule 60(d)(3) is more limited and concerns only "fraud on the court." Hunter relies on both provisions: in his 60(d)(1) claim, he asserts that the IRS defrauded him; and in his 60(d)(3) claim, he asserts that the IRS defrauded the court.

## C. Rule 60(d)(1) Claim

The district court properly dismissed Hunter's claim under Federal Rule of Civil Procedure 60(d)(1). The "indisputable elements" of such an action are:

(1) a judgment which ought not, in equity and good conscience, to be enforced;
(2) a good defense to the alleged cause of action on which the judgment is founded;
(3) fraud, accident, or mistake which prevented the defendant in the judgment from obtaining the benefit of his defense; (4) the absence of fault or negligence on the part of the defendant; and (5) the absence of any adequate remedy at law.

*Mitchell*, 651 F.3d at 595 (quoting *Barrett v. Sec'y of Health & Hum. Servs.*, 840 F.2d 1259, 1263 (6th Cir. 1987)). "[U]nder the Rule, an independent action should be available only to prevent a grave miscarriage of justice[,]" which is "a demanding standard." *United States v. Beggerly*, 524

U.S. 38, 47 (1998); *see also Giasson Aerospace Sci., Inc. v. RCO Eng'g, Inc.*, 872 F.3d 336, 339 (6th Cir. 2017) ("[T]he injustice must be so severe that enforcement of the original judgment would be 'manifestly unconscionable.'" (quoting *Mitchell*, 651 F.3d at 599)). "This is especially true for settlement agreements . . . [otherwise] the key virtue of settling cases—letting the parties move on after they each get some of what they want—would be lost." *Giasson*, 872 F.3d at 339 (quoting *Cummings v. Greater Cleveland Reg'l Transit Auth.*, 865 F.3d 844, 846 (6th Cir. 2017)).

Hunter argues that he meets this standard because the IRS and Sterling "fraudulently concealed" their settlement agreement from him. Appellant Br. at 23. The settlement agreement, Hunter argues, harmed him in two ways. First, he asserts that the settlement agreement impinged on his property rights because his right of redemption had not yet expired. *Id.* at 23. Second, he contends that the settlement agreement subordinated the IRS's liens to Sterling's deed, which reduced the proceeds from the property that went toward Hunter's tax liabilities, resulting in a higher tax liability than would otherwise have remained. *Id.* at 13–14.

The district court found that Hunter failed adequately to satisfy the Rule 60(d)(1) standard for three reasons: (1) he "failed to present good defenses to the original cause of action"; (2) he failed to offer "any plausible allegation of fraud"; and (3) he failed to allege that the original settlement resulted in a "grave miscarriage of justice." *Hunter III*, 2021 WL 1087654, at *4. The district court was correct.

### 1. Good Defense

First, the district court correctly found that Hunter failed to present "a good defense to the alleged cause of action on which the judgment is founded." *Mitchell*, 651 F.3d at 595. The district court rejected both of Hunter's defenses: (1) "that but for the stipulated dismissal, he could have

filed a counterclaim against the Government under 28 U.S.C. § 2410(a)"; and (2) "that the stipulated dismissal and Defendants' settlement agreement prevented him from redeeming his property." *Hunter III*, 2021 WL 1087654, at \*3–4.

The stipulated dismissal did not impact Hunter's ability to file a claim of his own because the dismissal was without prejudice. R. 10-4 (2017 Order) (Page ID #126). Further, Hunter was able to (and, in fact, did) sue the IRS in a separate action under 28 U.S.C. § 2410(a). *See Hunter II*, 769 F. App'x at 330–31. Moreover, this defense is not "a good defense" as is required to succeed under Rule 60(d)(1), *Mitchell*, 651 F.3d at 595, for we rejected Hunter's "quiet title" claim against the IRS in *Hunter II* and dismissed the action, 769 F. App'x at 333.

Likewise, Hunter failed to allege that the dismissal in *Sterling* prevented him from redeeming the property. It is true that the statutory redemption period had not expired when Hunter agreed to the stipulation of dismissal.[6] Sterling, however, did not file an eviction notice against Hunter until five days after the redemption period had expired.[7] Neither the settlement nor the stipulated dismissal prevented Hunter from redeeming the property before the redemption period expired. As a result, Hunter cannot present a good defense that satisfies the second element required for an independent action under Rule 60(d)(1).

### 2. Fraud

Next, the district court correctly found that Hunter failed to plausibly allege fraud. *Hunter III*, 2021 WL 1087654, at \*4. "[F]raud cognizable to maintain an untimely independent attack

---

[6]The order regarding stipulation of dismissal in *Sterling* was entered on September 18, 2017. R. 10-4 (2017 Order) (Page ID #126). The right to redeem expired on October 11, 2017. *See* R. 1 (Compl. ¶ 16) (Page ID #5) (nonjudicial foreclosure sale was on April 11, 2017); Mich. Comp. Laws § 600.3240(8) (redemption period is six months).

[7]Sterling filed the eviction notice on October 16, 2017. R. 1 (Compl. ¶ 36) (Page ID #10).

upon a valid and final judgment has long been regarded as requiring more than common law fraud." *Giasson*, 872 F.3d at 341 (internal quotation marks omitted). To show fraud under Rule 60(b)(3), a litigant must establish common-law fraud: "the knowing misrepresentation of a material fact, or concealment of the same when there is a duty to disclose, done to induce another to act to his or her detriment." *Info-Hold, Inc. v. Sound Merch., Inc.*, 538 F.3d 448, 456 (6th Cir. 2008). "However, to proceed with an independent action in equity [pursuant to Rule 60(d)] 'the level of fraud or misconduct' alleged must be 'several notches of severity above that required for a Rule 60(b)(3) motion[.]'" *Giasson*, 872 F.3d at 340 (quoting *Ballew v. U.S. Dep't of Just.*, 244 F.3d 138 (5th Cir. 2000) (unpublished table decision)). In both the 60(b)(3) and 60(d) contexts, the Sixth Circuit has explained that allegations that a party fraudulently concealed certain information in settlement negotiations do not rise to the level of fraud required by the rule, absent clear and convincing evidence of either affirmative misrepresentations or a deliberate breach of a duty to disclose. *See id.* (Rule 60(d)); *Info-Hold*, 538 F.3d at 456–58 (Rule 60(b)(3)).

Hunter argues that the IRS and Sterling fraudulently concealed their settlement agreement from him in violation of Federal Rule of Civil Procedure 41(a), which imposed upon them a duty to disclose it. Rule 41(a) provides that a plaintiff may dismiss an action by filing "a stipulation of dismissal signed by all parties who have appeared." Fed. R. Civ. P. 41(a)(1)(A)(ii). Hunter asserts that this rule requires that parties understand what they are giving up. He argues that the concealment of the settlement agreement prevented him from understanding what he was giving up when agreeing to the voluntary dismissal. Appellant Br. at 12–13.

First, Hunter's argument is irrelevant. Any fraud at issue must have "prevented the defendant in the judgment from obtaining the benefit of his defense." *Mitchell*, 651 F.3d at 595.

As discussed above, Hunter did not have a valid defense. Thus, even if Rule 41 imposed a duty to disclose the settlement agreement, the failure to do so did not keep Hunter from getting the benefit of his defense.

Hunter's claim that the IRS had a duty to disclose the settlement agreement also lacks merit. Hunter cites no cases in support of his reading of Rule 41 and instead relies on only Black's Law Dictionary's definitions of "stipulation" and "agreement" and a statement from a contracts casebook that for mutual assent parties "shall have a *reasonably clear conception* of what they are getting and what they are giving up." Appellant Br. at 12–13 (citation omitted). Rule 41(a)(1) provides, in full:

> (a) Voluntary Dismissal.
>> (1) *By the Plaintiff.*
>>> (A) *Without a Court Order.* Subject to Rules 23(e), 23.1(c), 23.2, and 66 and any applicable federal statute, the plaintiff may dismiss an action without a court order by filing:
>>>> (i) a notice of dismissal before the opposing party serves either an answer or a motion for summary judgment; or
>>>> (ii) a stipulation of dismissal signed by all parties who have appeared.
>>> (B) *Effect.* Unless the notice or stipulation states otherwise, the dismissal is without prejudice. But if the plaintiff previously dismissed any federal- or state-court action based on or including the same claim, a notice of dismissal operates as an adjudication on the merits.

The text of the rule contains no duty to disclose, and Hunter's argument that such a duty should be read into the rule is cursory and unpersuasive. Further, in a lawsuit involving allegations of fraud on the court, we previously rejected the argument that a party has a duty to disclose to the court a settlement agreement's terms prior to seeking a consent judgment. *Gen. Med., P.C. v. Horizon/CMS Health Care Corp.*, 475 F. App'x 65, 73–74 (6th Cir. 2012). Although this case is

different (it involves disclosure to another party, not to the court, and a voluntary stipulation of dismissal, not a consent judgment), the logic indicates a similar lack of a duty to disclose in this case.

Even if Rule 41 did impose a duty to disclose, the failure to disclose here would not rise to the level of fraud required for an independent action under Rule 60(d)(1). The only fact that Hunter plausibly alleges in relation to fraud is that the IRS did not disclose the settlement agreement. R. 1 (Compl. ¶¶ 33, 40) (Page ID #9, 11). Hunter does not allege that the government took any steps to deceive him or that he ever asked whether the voluntary dismissal came with any conditions. His allegations, therefore, cannot meet the high standard required in cases brought pursuant to Rule 60(d)(1). *See Giasson*, 872 F.3d at 340.

Hunter also attacks the settlement agreement itself. He claims that the settlement agreement is unenforceable, shocks the conscience, is unjust, and involves unlawful "selective depletion."[8] Appellant Br. at 15–22. None of these arguments is relevant. Hunter seeks relief from the stipulation of dismissal, not from the settlement agreement. R. 1 (Compl. at 17) (Page ID #17). The ground upon which he seeks that relief is the IRS's and Sterling's failure to *disclose* the settlement agreement. There is no connection between the *validity* of the settlement agreement and Hunter's claims in this case.

### 3. Grave Miscarriage of Justice

Next, the district court was correct in determining that Hunter failed to allege a grave miscarriage of justice. This standard requires a plaintiff to allege "an injustice 'sufficiently gross'

---

[8]Hunter's brief explains this concept as follows: "'Selective depletion' occurs when the government voluntarily forfeits maximizing the amount realized from the sale of one of the taxpayer's assets and makes up the difference by levying on the taxpayer's remaining assets." Appellant Br. at 20.

to merit departing from the strict doctrine of res judicata," and "[f]ew aggrieved parties have met this demanding standard." *Giasson*, 872 F.3d at 339–40 (quoting *Beggerly*, 524 U.S. at 46). As a result, "a 'grave miscarriage of justice' in the Rule 60 context has been defined largely by what it is not." *Id.* For example, in *Giasson*, the Sixth Circuit held that allegations that a party misrepresented pricing information during settlement negotiations did not amount to a grave miscarriage of justice. *Id.* at 341–42. Other types of conduct that do not meet this standard include: allegations that the government withheld information during litigation, *Beggerly*, 524 U.S. at 47; an "incorrect, adverse legal decision that was not remedied," *Mitchell*, 651 F.3d at 599; and allegations of perjury, *Comput. Leasco, Inc. v. NTP, Inc.*, 194 F. App'x 328, 336 (6th Cir. 2006). Similarly, Hunter's allegations do not meet this high standard.

## D.  Rule 60(d)(3) Claim

Finally, Hunter argues that the stipulated dismissal should be set aside pursuant to Federal Rule of Civil Procedure 60(d)(3), which permits courts to "set aside a judgment for fraud on the court." Fraud on the court is:

> conduct: 1) on the part of an officer of the court; that 2) is directed to the judicial machinery itself; 3) is intentionally false, willfully blind to the truth, or is in reckless disregard for the truth; 4) is a positive averment or a concealment when one is under a duty to disclose; and 5) deceives the court.

*Carter v. Anderson*, 585 F.3d 1007, 1011 (6th Cir. 2009). Fraud on the court must be proved by clear and convincing evidence. *Id.* Moreover, fraud on the court applies to "only that species of fraud which does[,] or attempts to, subvert the integrity of the court itself, or is a fraud perpetrated by officers of the court so that the judicial machinery cannot perform in the usual manner its impartial task of adjudging cases that are presented for adjudication." *Gen. Med.*, 475 F. App'x at 71 (quoting *Demjanjuk v. Petrovsky*, 10 F.3d 338, 352 (6th Cir. 1993)).

11

Although Rule 60(d)(3) is distinct from Rule 60(d)(1), Hunter's claims under the two provisions rely on the same allegations of fraud. In his Rule 60(d)(3) claim, Hunter argues that the government fraudulently misrepresented to the district court that Hunter had stipulated to the voluntary dismissal in *Sterling*. Appellant Br. at 30. He argues that IRS's representation was fraudulent because Hunter did not know about the settlement agreement when he stipulated to the voluntary dismissal. *Id.* In other words, his fraud-on-the-court claim depends on the veracity of his claim that the IRS defrauded him—if it did not defraud him, then there was no fraud on the court.

The argument thus fails for many of the same reasons that Hunter's Rule 60(d)(1) argument fails, each of which is discussed above. First, Hunter cannot adequately allege fraud because there was not a duty to disclose the underlying settlement agreement. Second, even if he could allege fraud, it would not rise to the level of severity required for a Rule 60(d) independent action.

Moreover, Hunter has not alleged that any fraud deceived the *Sterling* court. *See Carter*, 585 F.3d at 1011. "Rule 41(a)(1)(A)(ii) orders, generally speaking, are 'self-executing' and do 'not require judicial approval.'" *Exact Software N. Am., Inc. v. DeMoisey*, 718 F.3d 535, 540 (6th Cir. 2013) (quoting *Green v. Nevers*, 111 F.3d 1295, 1301 (6th Cir. 1997)); *see* Fed. R. Civ. P. 41(a)(1)(A)(ii) ("[T]he plaintiff may dismiss an action *without a court order* by filing . . . a stipulation of dismissal signed by all parties who have appeared." (emphasis added)). It is thus difficult to see how any fraud, if it existed, could have been directed at the court.

Hunter attempts to analogize this case to *Dixon v. Commissioner*, 316 F.3d 1041 (9th Cir. 2003), in which the Ninth Circuit held that the IRS's counsel committed fraud on the Tax Court. In *Dixon*, the IRS issued notices of deficiency to approximately 1,800 taxpayers. *Id.* at 1043. Most

of the taxpayers signed stipulations agreeing to be bound by the decision in a test case that would be used to determine liability. *Id.* IRS counsel and the test-case petitioners entered into secret settlement agreements that they hid from the other taxpayers and the court, while nonetheless continuing with the test-case proceedings. *Id.* at 1044. IRS counsel not only hid the settlement agreements, but made secret payments to witnesses, filed false documents with the court, and "sat silently through testimony . . . he knew to be false." *Id.* at 1044–45. *Dixon* is entirely dissimilar from this case: the conduct is simply not comparable. In *Dixon*, IRS counsel made the Tax Court "believe[] it was hearing a legitimate adversarial dispute when, in fact, the proceeding was a charade fraught with concealed motives, hidden payments, and false testimony." *Id.* at 1046–47. In this case, Hunter merely objects to a voluntary stipulation and alleges no misrepresentations to the court other than the IRS's failure to disclose a separate settlement agreement. In short, although *Dixon* shows that fraud on the court *can* be a basis to set aside a judgment in extreme circumstances, *Dixon* sheds no light on whether the district court should have set aside the judgment in this case.

### III.  CONCLUSION

For the foregoing reasons, we **AFFIRM** the district court's judgment dismissing Hunter's complaint for failure to state a claim.